JOHN F. TULLY, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff, v. JIM EDGAR, as Governor, *et al.*, Defendants (Judith Ann Calder, as Trustee of the Board of Trustees of the University of Illinois, Defendant-Appellee; James E. Ryan, Attorney General, Appellant).

First District (6th Division)    No. 1—95—2426

Opinion filed February 21, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for appellant.

Lee Schwartz, of Chicago, for appellee.

JUSTICE ZWICK delivered the opinion of the court:

The issues presented in this case, brought by the Attorney General as an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)),[1] concern whether the circuit court acted within its authority in: (1) appointing attorney Lee J. Schwartz as special Attorney General to represent University of Illinois trustee Judith Ann Calder in the above-captioned matter, and (2) ordering the Attorney General to process monthly vouchers for Mr. Schwartz's fees, including fees relating to Calder's "affirmative pleadings."

In early 1995 the General Assembly passed Public Act 89—5, "An Act relating to the University of Illinois ***" (the University Act) (Pub. Act 89—5, eff. January 1, 1996). Governor Edgar subsequently signed the University Act, which terminated the terms of each of the then-sitting trustees of the University of Illinois on January 1, 1996. The University Act replaced the elected trustees with trustees to be appointed by the Governor.

On May 5, 1995, plaintiff, John F. Tully, as a private citizen and voter, brought a declaratory judgment action against the Governor and President of the Illinois Senate, as well as against Calder and the eight other elected trustees of the University of Illinois. Plaintiff

---

[1]Alternatively, the Attorney General claims this appeal is proper under Supreme Court Rule 301, citing *People v. Pine*, 129 Ill. 2d 88, 542 N.E.2d 711 (1989). We need not decide whether we have Rule 301 jurisdiction, as we find proper jurisdiction under Rule 307(a)(1).

challenged the validity of the University Act in that it prematurely terminated the terms of office for which the trustees had been elected.

On June 4, 1995, attorney Lee J. Schwartz sent a letter to the Attorney General requesting that he be made a special Attorney General to represent Calder in the litigation pursuant to the State Employee Indemnification Act (5 ILCS 350/2(b) (West 1994)) (the Indemnification Act). Schwartz indicated that Calder was considering challenging the constitutionality of the University Act.

In correspondence dated June 27, 1995, the Attorney General's chief of staff, Stephen J. Culliton, refused Schwartz's request. He noted that both Jenner & Block, counsel for the other trustees, as well as the Attorney General's office, were available to defend Calder. In addition, Culliton stated that the Indemnification Act did not contemplate the appointment of private counsel for the purposes of affirmatively challenging the constitutionality of legislation.

Subsequently, on July 7, 1995, Calder appeared in the circuit court with attorney Schwartz seeking his appointment as special Attorney General to argue on her behalf. Schwartz noted that the Attorney General had refused to represent Calder either directly or by appointing a special Attorney General to handle the case. He also noted that elected officials are entitled to retain their own attorneys under section 2 of the Indemnification Act. See 5 ILCS 350/2(b) (West 1994). The court allowed Schwartz to proceed as special Attorney General. Schwartz subsequently filed an answer to plaintiff's complaint on Calder's behalf. In addition, Schwartz filed affirmative pleadings challenging the validity of the University Act on eight grounds not raised by the plaintiff's initial complaint.

On July 12, 1995, the Attorney General filed a motion in the circuit court seeking reconsideration of the court's order appointing Schwartz. Prior to that hearing, attorney William D. Heinz circulated a letter on behalf of Jenner & Block explaining his firm's position with regard to the litigation. He stated that his firm was ready and willing to represent Calder, but could not do so in light of Calder's insistence on being represented by Schwartz. He also explained that he had a conflict of interest in taking the case as the other trustees had resolved not to challenge the validity of the University Act, a position inconsistent with the one Calder wished to take. See generally, Rules of Professional Conduct, 134 Ill. 2d R. 1.2(a) ("[a] lawyer shall abide by a client's decisions concerning the objectives of representation"); 134 Ill. 2d R. 1.7 (prohibiting an attorney from representing clients with adverse positions).

The circuit court denied the Attorney General's motion for reconsideration and the Attorney General promptly filed this appeal.

On motion of the Attorney General, we stayed the circuit court's order requiring the Attorney General to process monthly vouchers.

The plaintiff's case proceeded in the circuit court with Schwartz representing Calder without compensation. Subsequently, the circuit court ruled in favor of plaintiff on the substantive issues of the case and consistently with Calder's position that the University Act prematurely and unconstitutionally terminated the trustees' terms in office. On direct and expedited appeal to the Supreme Court of Illinois, the circuit court's ruling was affirmed. *Tully v. Edgar*, 171 Ill. 2d 297, 664 N.E.2d 43 (1996). The supreme court held that the University Act affected the public's fundamental right to vote and that, in the absence of a compelling state interest, Illinois voters are entitled to have elected officials serve out the full terms for which they have been elected. *Tully*, 171 Ill. 2d at 311.

The only claim not resolved by the supreme court's opinion in *Tully* is the question of whether the circuit court properly appointed Schwartz as a special Attorney General. The Attorney General argues the appointment violated sovereign immunity as well as the doctrine of separation of powers; that the Attorney General's obligation to represent Calder is limited by the terms of the Indemnification Act to "defending" Calder against liability, a duty which, in this case, did not include challenging the constitutionality of the University Act; and that he acted within his discretion in insisting that Calder be represented by Jenner & Block, attorneys for the other trustees. Calder argues, in response, that sovereign immunity and the separation of powers doctrine should not apply to the present dispute in light of the Attorney General's statutory obligations under the Indemnification Act. She also argues that her affirmative pleadings constituted a reasonable aspect of her defense of the case, as contemplated by the Indemnification Act.

■ Section 2(a) of the Indemnification Act provides, in part, that state employees who are sued for official misconduct are to be indemnified by the State for any resulting personal liability. 5 ILCS 350/2(a) (West 1994). In addition, section 2(a) provides that a defendant is to be defended, as necessary, by the Attorney General. 5 ILCS 350/2(a) (West 1994). Section 2(b) of the Indemnification Act provides, in part, that if the Attorney General is unable to represent the defendant under section 2(a) because of a conflict of interest, or if the employee is an elected official, the employee may retain his or her own attorney to conduct the defense. 5 ILCS 350/2(b) (West 1994).

The Attorney General emphasizes that, as a condition of receiving representation by his office under the Indemnification Act, state employees are required by the terms of section 2(a) to "cooperate

with the Attorney General in [the employee's] defense of the action and *** consent that the Attorney General shall conduct the defense as [the Attorney General] deems advisable and in the best interests of the employee, including settlement in the Attorney General's discretion." 5 ILCS 350/2(a) (West 1994). The Attorney General also points out that the Indemnification Act repetitively addresses the Attorney General's obligation to "defend" state employees. In the Attorney General's view, his duty to "defend" a state employee under section 2 of the Indemnification Act does not include filing affirmative pleadings such as those filed by Calder.

Calder responds that the "cooperate," "consent" and "settlement" requirements set out in section 2(a) of the Indemnification Act do not apply to her as she is entitled, as an elected official, to engage private counsel under the terms of section 2(b). Calder argues that it would be anomalous for the Indemnification Act to provide her with the benefit of choosing her own private counsel, but then to require that counsel to receive approval from the Attorney General in how her defense should be conducted.

■ The fundamental canon of statutory construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454, 657 N.E.2d 997 (1995). In doing so we look principally to the words of the statute itself (*Metropolitan Life Insurance Co. v. Washburn*, 112 Ill. 2d 486, 492, 493 N.E.2d 1071 (1986)), for the language used by the legislature is the best indication of legislative intent (*Kirwan v. Welch*, 133 Ill. 2d 163, 165, 549 N.E.2d 348 (1989); *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151, 485 N.E.2d 1076 (1985)). When the statutory language is clear, as here, no resort is necessary to other tools of interpretation. *Toner v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 259 Ill. App. 3d 67, 70, 630 N.E.2d 1163 (1994).

■ There is no dispute that Calder has been sued in her official capacity as an elected state official. As such, there can be no reasonable dispute that she is entitled to be represented by private counsel under the clear and unambiguous terms of section 2(b) of the Indemnification Act. The Indemnification Act provides in relevant part:

> "In the event that the defendant in the proceeding is an elected State official, *** the elected State official may retain his or her attorney, provided that said attorney shall be reasonably acceptable to the Attorney General. In such case the State shall pay the elected State official's court costs, litigation expenses, and attorneys' fees, to the extent approved by the Attorney General as reasonable, as they are incurred." 5 ILCS 350/2(b) (West 1994).

We find it notable that the "cooperate," "consent" and "settlement" language used by section 2(a) of the Indemnification Act does not appear in section 2(b). This omission is significant. The only requirement imposed by section 2(b) of the Indemnification Act is that the attorney chosen be "reasonably acceptable to the Attorney General." It is also significant that the General Assembly determined it necessary to address the representation of elected state officials, as well as employees having a conflict of interest with the Attorney General's office, in a separate paragraph in section 2(b), apart from the provisions governing other state employees generally. The exclusion of the "cooperate," "consent" and "settlement" language in section 2(b) indicates that the General Assembly intended to curtail the Attorney General's influence over how elected state employees conduct their defense in litigation. Although we recognize that section 2(b) of the Act states that private counsel must be "reasonably acceptable to the Attorney General," we do not read this phrase as giving the Attorney General the same right to involve himself in the employee's defense as under section 2(a).

We conclude that, unlike section 2(a) of the Indemnification Act, which explicitly provides otherwise, lawyers appointed as special Attorneys General under the terms of section 2(b) must exercise independent judgment in protecting the interests of their state employee clients, without interference from, or with regard to the views of, the Attorney General. This requirement springs from the general duty applied to all attorneys to work for the best interests of their client, without regard to who may ultimately be paying their fees.

With regard to the Indemnification Act, however, our agreement with Calder ends at this point. We simply cannot accept Calder's claim regarding the reasonableness of her affirmative pleadings.

Calder invokes an analogy to a popular sports strategy suggesting that, as in football, the best defense may be the deployment of a strong offense. She thereby urges us to view her affirmative pleadings as a mere part of her overall defense. Our review of those pleadings makes plain, however, that her pleadings are not designed, in any sense, to protect her from incurring "liability" from the plaintiff's claims. Rather, Calder's affirmative pleadings had the exclusive effect of injecting new claims into the litigation.

The Indemnification Act is designed to reimburse state employees for their "[c]ourt costs and litigation expenses and other costs of providing a *defense*." (Emphasis added.) 5 ILCS 350/2(e)(i) (West 1996). The Indemnification Act speaks repeatedly of "defending" an action on behalf of state employees, but never refers to "instituting" or "prosecuting" actions on their behalf. As we discuss more fully

below, the absence of these words in the Indemnification Act is meaningful. In short, and to employ a common metaphor, the Indemnification Act provides state employees with a shield by which they may defend themselves from potential personal liability, not a sword by which to advance unrelated claims.

If we were to decide this appeal on the briefs and the terms of the Indemnification Act alone, we would be tempted to find that the Attorney General must compensate Schwartz for his services in consulting with and "defending" Calder, but that the Attorney General need not do so with regard to those expenses related to Calder's affirmative pleadings. Our analysis cannot stop, however, with those arguments. At oral argument, Assistant Attorney General Susan Fredrick Rhodes brought to our attention the appellate court's recent decision in *Suburban Cook County Regional Office of Education v. Cook County Board*, 282 Ill. App. 3d 560, 667 N.E.2d 1064 (1996) (hereinafter *Lehman*). In *Lehman*, the appellate court affirmed the circuit court's appointment of a special attorney to represent an elected state official as a plaintiff in litigation against the Cook County Board. Although conceding that the case is factually similar,[2] she argued that the *Lehman* case was distinguishable because the court in *Lehman* did not rely upon the Indemnification Act in rendering its ruling. Attorney Schwartz, arguing for Calder in response, also raised the recent *Lehman* decision, but took the position that *Lehman* was factually indistinguishable and represents an alternative basis by which we might affirm the circuit court's ruling.

In *Lehman*, Dr. Lloyd W. Lehman, an elected state official acting as superintendent of the Suburban Cook County Regional Office of Education, brought suit against the Cook County Board (the Board). Dr. Lehman claimed in his suit that the Board was in violation of article 4 of the School Code (105 ILCS 5/4—1 *et seq.* (West 1992)) by its refusal to adequately fund his office and staff. Prior to bringing his suit, Dr. Lehman contacted the Cook County State's Attorney and

---

[2]We note that Ms. Rhodes' reference to the *Lehman* decision at oral argument was in keeping with her responsibilities under the Code of Professional Responsibility, which requires attorneys to disclose all legal authority from a controlling jurisdiction known to be directly adverse to their client's position. 134 Ill. 2d R. 3.3(a)(3). The *Lehman* opinion was handed down after the briefs were filed in this case and was not, therefore, available to the parties at the time they prepared their briefs. Although we were aware of the existence of the *Lehman* opinion prior to oral argument, we compliment Ms. Rhodes for her forthrightness in meeting her professional obligation as an officer of the court.

the Attorney General and sought representation. The State's Attorney declined to file suit on his behalf and advised Dr. Lehman not to litigate the issue using private counsel because the State's Attorney was his legal representative. *Lehman*, 282 Ill. App. 3d at 564. The Attorney General apparently did not respond to Dr. Lehman's request. *Lehman*, 282 Ill. App. 3d at 568.

Undeterred by the State's Attorney's advice, Dr. Lehman contacted his own attorney, who subsequently petitioned the circuit court to allow him to represent Dr. Lehman's office as a special State's Attorney. The circuit court agreed to the appointment of counsel but determined that Dr. Lehman was entitled to be represented by a special Attorney General under the Attorney General Act (15 ILCS 205/6 (West 1992)), as opposed to a special State's Attorney. The court then appointed Lehman's counsel as a special Attorney General.

The case proceeded in the circuit court, which ultimately ruled against Dr. Lehman's substantive claims. The appellate court affirmed the circuit court on appeal, noting that the general requirement of article 4 of the School Code requiring the County Board to fund regional education offices did not apply to Dr. Lehman's office in light of a specific statutory exemption. *Lehman*, 282 Ill. App. 3d at 563. The court then turned its attention to the question of Dr. Lehman's representation and the Attorney General's arguments against the appointment of Lehman's private counsel as a special Attorney General.

We are of the view, made at oral argument, that Calder's affirmative pleadings present the same issue as was presented to the court in *Lehman*. The issue in *Lehman* was "the very troublesome question of the right to representation of an elected official when his opinion of the law applicable to his office is in conflict with the opinion of the lawyer whose statutory duty is to represent that elected official." *Lehman*, 282 Ill. App. 3d at 570-71. The *Lehman* case therefore represents controlling precedent.

With regard to the appointment of Dr. Lehman's attorney as special Attorney General, the appellate court in *Lehman* affirmed the circuit court, although the court determined that Dr. Lehman's attorney should have been appointed as a special State's Attorney (as Dr. Lehman had originally requested). *Lehman*, 282 Ill. App. 3d at 569-70. The court then determined that once the State's Attorney was shown to the circuit court's satisfaction to have an "unreconcilable" conflict of interest in exercising his statutory duties in favor of Dr. Lehman and the County Board (*Lehman*, 282 Ill. App. 3d at 575), the court had authority under the common law to appoint private

counsel so as to abate that conflict. The same result must follow here. If the circuit court had the authority to appoint private counsel to act as a special State's Attorney to advance claims on behalf of Dr. Lehman as an elected official, that same authority must be available to Calder with regard to her representation by the Attorney General.

Although we need no further support in reaching this decision, we note that the Attorney General is a constitutional officer (Ill. Const. 1970, art. V, § 15), charged with the representation of "the people of the state" (15 ILCS 205/4 (West 1994)). To this end, the Attorney General Act provides that it is the Attorney General's duty to "*institute and prosecute* all actions and proceedings" (emphasis added) as may "be necessary in the execution of the duties of any state officer." 15 ILCS 205/4 (West 1994). Although the Attorney General has wide discretion in how he meets this obligation, the duty to advance the interests of the people of the state is mandatory, not discretionary, and stands in marked contrast to the obligations imposed by the Indemnification Act, which requires only that the Attorney General "defend" state employees from liability claims.

In our view, the supreme court's opinion in *Tully* establishes conclusively that some form of litigation was necessary to protect both Calder's rights to serve out her elected term and the voters' right to see their elected official complete the job for which she had been elected. It follows, albeit with the advantages of hindsight, that when Calder requested representation to advance her position that the University Act was unconstitutional, the Attorney General was under an obligation to see that this position was competently presented by counsel to the trial court. The fact that the Attorney General had similar, inconsistent duties toward the Governor in defending the validity of the University Act is not an acceptable excuse for his having abandoned Calder and leaving her without representation. The rules prohibiting an attorney accepting representations which create a conflict between clients applies generally to the Attorney General (see *Lehman*, 282 Ill. App. 3d at 575, citing *In re Vrdolyak*, 137 Ill. 2d 407, 560 N.E.2d 840 (1990)), although we recognize that the Attorney General's office may, in certain cases and with due care, represent two opposing interests in the same litigation (see *e.g., Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 372 N.E.2d 50 (1977)).

We conclude the Attorney General in this case should have offered Calder, an elected official, the representation she requested in light of her colorable claims that her office was being unconstitutionally terminated by the University Act and then taken whatever affirmative steps were necessary to abate the conflicts that necessarily

resulted from that representation. In the absence of such affirmative steps by the Attorney General, we conclude that the circuit court acted within its authority in appointing attorney Schwartz as a special Attorney General to represent her interests.

■ We turn our attention briefly to the circuit court's order requiring the Attorney General to process monthly vouchers in favor of Schwartz for his services to Calder. The Attorney General argues that requiring his office to pay Schwartz amounts to a violation of sovereign immunity and the separation of powers doctrine in that the Attorney General is an executive officer and should not be subject to such control by the judicial branch. We summarily reject this argument.

It is well established that a circuit court is endowed with broad discretion to fashion such remedies or to grant such relief as equity may require to remedy a wrong. *Orr v. Edgar*, 283 Ill. App. 3d 1088, 670 N.E.2d 1243 (1996); *Daniels v. Anderson*, 162 Ill. 2d 47, 65, 642 N.E.2d 128 (1994). We have concluded that the Attorney General had a clear obligation to represent Calder in this litigation, but that he wrongly refused to do so. Even though the circuit court relied upon neither its common law authority nor the as-yet unwritten opinion in *Lehman*, we conclude the circuit court's order requiring Schwartz's fees to be paid by the Attorney General was an appropriate remedy under the circumstances. Schwartz's representation of Calder in this case had the potential of being of crucial importance to the administration of justice. See *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 468, 537 N.E.2d 784 (1989). In addition, the court's order was consistent with the judicial branch's role of supervising those attorneys who practice before us, a class which includes the Attorney General. See *Lehman*, 282 Ill. App. 3d at 575-76; *County of Kane v. Carlson*, 116 Ill. 2d 186, 206-08, 507 N.E.2d 482 (1987).

In sum, we reaffirm the ruling in *Lehman*. To the extent that the Attorney General has a conflict in the representation of an elected official that the Attorney General is unable or unwilling to resolve, the circuit court has the authority to remove that conflict through the appointment of a special attorney, as well as the corresponding authority to see that that attorney gets paid a reasonable fee for his or her services.

For the foregoing reasons, the stay imposed upon the circuit court's order providing for the payment of trustee Judith Ann Calder's legal fees to attorney Lee J. Schwartz is vacated. The matter

is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed and remanded.

McNAMARA and RAKOWSKI, JJ., concur.