TTX COMPANY, Plaintiff-Appellant, v. DOUGLAS L. WHITLEY, Director, The Department of Revenue, *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—98—3604

Opinion filed March 31, 2000.—Rehearing denied June 2, 2000.

Mayer, Brown & Platt, of Chicago (Frederic Hahn, of counsel), and Baker, Donelson, Bearman & Caldwell, of Washington, D.C. (James McBride, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brian Barov, Assistant Attorney General, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff TTX Company (TTX) appeals from the circuit court's order granting summary judgment to defendants Douglas L. Whitley, former Director of the Illinois Department of Revenue, and Patrick Quinn, former Treasurer of the State of Illinois (collectively Department). TTX's suit against defendants sought, among other things, to recover state income taxes paid under protest for calendar years 1987 through 1989. TTX asserts that the court erred in granting summary judgment in favor of defendants and against TTX, because a genuine issue of material fact exists as to whether the single-factor apportionment formula for companies "furnishing transportation services," set forth in section 304(d) of the Illinois Income Tax Act (Tax Act or Act)

(Ill. Rev. Stat. 1987, ch. 120, par. 3—304(d)) (recodified as 35 ILCS 5/304(d) (West 1996)),[1] may be used only by companies that directly haul at least one passenger or one ton of freight for one mile.

This court previously decided the Department's chief counsel's appeal of a contempt order entered against him by the circuit court because of his noncompliance with a discovery request in this case. *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 692 N.E.2d 790 (1998). Some of the facts set forth in that decision are reiterated below for purposes of clarity.

On October 9, 1992, TTX filed a verified complaint against defendants pursuant to the State Officers and Employees Money Disposition Act (Protest Act) (Ill. Rev. Stat. 1987, ch. 127, par. 170 *et seq.* (recodified as 30 ILCS 230/1 *et seq.* (West 1996)), asking to recover income tax, interest and penalty remittances assessed against it by the Department for tax years 1987 through 1989 and seeking declaratory judgment, an injunction and other relief. TTX had timely filed a notice of protest with the Department and paid $1,104,150 into the protest fund on September 16, 1992. On October 14, 1992, the circuit court entered an agreed preliminary injunction order to prevent the transfer of said sum out of the protest fund described in the Protest Act, among other things.

TTX, formerly known as Trailer Train Company, is owned by and provides a fleet of railcars to the nation's railroads, its "members," pursuant to a pooling agreement and car contracts authorized by the Interstate Commerce Commission (ICC). TTX and its subsidiaries, Railbox Corporation and Railgon Corporation (collectively TTX), provide railcars primarily for intermodal service, which is the movement of freight from origin to destination, using more than one mode of transportation. TTX designs equipment to facilitate the transportation of intermodal freight, in conjunction with railroads and motor carriers. Under the terms of a car contract, the member railroad using the cars is referred to as the "carrier," which pays TTX for use of the car based both on a *per diem* and on the mileage of movement of the car, loaded or empty. The carrier's fees are reduced 50% (a reclaim of *per diem* charges) when a TTX car is not in "transportation service." Under the car contract, a car is not in transportation service when "it is neither under load nor in movement (loaded or empty) at any time during the day."

TTX also consults with railroads, motor carriers, and shippers to

---

[1]There have been no relevant changes in the Tax Act between the time of the tax years in question and the more recent 1996 statutes cited by the parties; all further citations will be to the 1996 statutes.

estimate how much intermodal freight will be transported by rail each year and what share of that freight will be carried in TTX equipment, then ensuring that it will have the right number and type of equipment in the right place to move the freight in the most efficient and cost-effective manner possible. Most of the goods transported in trailers and containers are finished goods, such as clothing, packaged foods and household furnishings. These trailers and containers are freely interchanged from motor carriers to rail and back. When traveling by rail, those trailers and containers are carried on TTX equipment most of the time. TTX owns 76% to 80% of the railcars that haul containers and trailers. TTX equipment carries approximately 20% of all railcar loads in the country. TTX is considered an integral part of the intermodal freight distribution system in the United States.

Under the interchange rules of the Surface Transportation Board (formerly the ICC), railroads must provide "through rates and joint routes." Under these rules, freight cars are moved freely between railroads. When a freight car belonging to one railroad is transferred onto the line of a different railroad, the owning railroad is compensated for the use of its car by hour and mileage. Where, however, the cars are owned by private car line companies (companies not owned by the railroads or operating under pooling agreements), compensation, or car hire, is paid for each loaded mile used. TTX, although not a railroad, is compensated for the use of its cars in the same manner as a railroad would be, rather than as a nonrailroad railcar owner. The Department maintains, however, that TTX is a "private car line."

Under the terms of the pooling agreement between TTX and its member railroads, as approved by the ICC, TTX is compensated only when its cars are actually in "transportation service." If a car is not used for five days, the railroad may return it to TTX. TTX therefore directly benefits from the hauling of freight, where it receives compensation only when its cars are actually in use. TTX does not lease cars and does not have individual contracts with railroads or shippers, where the use of its cars is governed by a pooling agreement. Even railroads that are not members of the pooling agreement must compensate TTX for the use of its cars in the same manner and amount as do member railroads. TTX's mission "is to provide standardized railroad equipment and related services to the nation's railroads at the lowest possible car hire rates while providing for proper maintenance, allowing for growth and modernization of the fleet and permitting financing of equipment on reasonable terms."

Prior to 1986, TTX apportioned its income to Illinois for state income tax purposes using the standard three-factor formula. On about January 9, 1986, TTX received correspondence from the Depart-

ment regarding its tax return for tax year 1984. That correspondence stated, in part, "It appears you should be filing and apportioning your income as a transportation company. Please explain why a three factor formula is used on the IL—1120, Part III."

On February 13, 1986, TTX wrote a letter to the Department, the only communication between TTX and the Department prior to the audit, asking it to substantiate its reason for suggesting it should apportion its income as a transportation company. Thereafter, beginning with the 1985 tax year, TTX began filing and apportioning its income using the single-factor formula.

In a letter dated July 21, 1992, following its audit of TTX's returns for the 1987, 1988 and 1989 tax years, the Department notified TTX of a deficiency in the amount of $852,508 covering taxes and penalties for those years, much of which was based on the Department's determination that TTX must use the three-factor formula rather than the single-factor formula. It also indicated interest was owed on that deficiency. The auditor, in a report dated August 26, 1991, also concluded that TTX should have used the multifactor apportionment formula of property, payroll and sales for the audit period. In computing the proper amount of taxes owed under the multifactor apportionment method, the auditor relied on the ratio of in-state to out-of-state miles traveled by TTX's railcars in computing the sales and property factors, because TTX did not provide records of the time its mobile property was in and out of state, the usual basis for computing the sales and property factors of mobile property under Department regulations. The auditor determined that using "miles traveled" was the best available method for computing the apportionment factors for TTX's railcars.

On February 1, 1996, the Department filed its motion for summary judgment arguing that, because TTX did not haul freight or carry passengers, it did not meet the statutory requirement for single-factor apportionment under section 304(d). TTX responded that, as an integral part of the railroad industry, it indirectly, if not directly, provided transportation services. TTX argued there was a question of material fact as to whether it provided transportation services, within the meaning of section 304(d).

During the pendency of the case, TTX sought discovery concerning the Department's actual interpretation of section 304(d). On January 5, 1996, TTX posed an interrogatory that read:

"For the tax years 1987, 1988, and 1989, please identify each taxpayer who apportioned income to Illinois using the single factor transportation formula provided for in 35 ILCS 5/304(d)(1)."

The Department objected to this interrogatory on the grounds that

TTX did not seek relevant information, the information sought would be unduly burdensome for the Department to produce, and it sought confidential taxpayer information. On July 11, 1996, following a hearing, the circuit court denied TTX's motion. Nevertheless, the court expressed a need to satisfy itself that the Department was applying section 304(d) to other taxpayers in the same manner that it applied to TTX for the years at issue, and it ordered TTX to give the Department a list of 200 taxpayers that TTX believed might be using the formula, which the Department was to review and from its records provide the court a second list of those taxpayers on the first list who did in fact use the single-factor formula. The Department was also to prepare a third list for the court of taxpayers on the second list who had been audited for any of the tax years at issue. Finally, the Department was to prepare an affidavit, stating what criteria were applied to determine if a taxpayer could use the single-factor formula and whether those criteria were applied in an equal manner to those taxpayers audited by the Department.

On August 15, 1996, the circuit court entered an order directing the Department to provide a detailed affidavit as to why the Department would not be able to comply with the July 11, 1996, order. In an affidavit by William Lundeen, chief counsel, dated August 20, 1996, the Department refused to comply with the order, averring that obeying the order would violate section 917(b) of the Tax Act, which states, in part, that all income tax information received from tax returns or from an investigation shall be confidential and that any person who divulges information received by the Department from returns shall be guilty of a Class A misdemeanor. The court held Lundeen in contempt for his refusal to comply with the order. Lundeen filed a notice of appeal to this court, which reversed the contempt order, holding that the circuit court could not order production of any information that was confidential under section 917 and that the information sought was not relevant to TTX's claims, since TTX had not raised an equal protection claim in this case. *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 692 N.E.2d 790 (1998).

Summary judgment for the Department was entered on August 31, 1998, adopting the Department's argument that TTX could not be a transportation company because it did not generate revenue miles and held TTX did not meet the statutory definition of a provider of transportation services because it did not haul freight or carry passengers. The circuit court ordered the preliminary injunction dissolved and the monies from the protest fund transferred into the general revenue fund. TTX timely filed its notice of appeal. On September 28, 1998, the court entered an agreed order staying enforcement of the August 31, 1998, judgment, pending appeal.

I

TTX contends that the circuit court erred in granting summary judgment to the Department on the basis that TTX cannot be considered a transportation company under section 304(d) of the Tax Act unless it directly hauls at least one passenger or one ton of freight the distance of one mile.

TTX maintains the real issue presented by the instant case is whether, under all of the facts and circumstances present in this case, TTX is in the business of directly or indirectly furnishing transportation services, a disputed issue of material fact which precludes the granting of summary judgment in this case.

The Department counters that the circuit court properly granted summary judgment in its favor because TTX does not provide transportation services within the meaning of section 304(d) as a matter of law and is therefore not entitled to use the single-factor apportionment formula. The Department construes section 304(a) to apply only to carriers; although TTX's equipment clearly transports freight, because TTX itself is not a carrier and hauls neither passengers nor freight directly for one mile, it cannot use the single-factor apportionment formula to apportion its income to Illinois.

■ Summary judgment is properly granted where the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992); *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751, 681 N.E.2d 552 (1997). Because this is an appeal from an order granting summary judgment not involving credibility determinations, our review of this case is *de novo*. *Mobil*, 288 Ill. App. 3d at 751; *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 285 Ill. App. 3d 201, 209, 673 N.E.2d 369 (1996), *aff'd*, 181 Ill. 2d 214, 692 N.E.2d 269 (1998).

■ Statutory interpretation presents a question of law. *Northwest Airlines, Inc. v. Department of Revenue*, 295 Ill. App. 3d 889, 892, 692 N.E.2d 1264 (1998) (*Northwest Airlines*). The Department's interpretation of the Act is relevant and will be accorded some deference on review, as the agency charged with administration and enforcement of the Act; however, its interpretation is not binding on this court, which will review the matter *de novo*. *Northwest Airlines*, 295 Ill. App. 3d at 892. The primary goal of statutory construction is to ascertain and give effect to legislative intent and meaning. *Texaco-Cities Service Pipeline Co. V. McGaw*, 182 Ill. 2d 262, 270, 695 N.E.2d 481 (1998) (*Texaco-Cities*). Inquiry into the legislature's intent "begins with the

language of the statute and, when necessary, includes the reasons for the statute's enactment and the purposes sought to be obtained." *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473, 478, 673 N.E.2d 710 (1996). The language of a statute, if possible, should be construed so that no term is superfluous or meaningless. *Texaco-Cities*, 182 Ill. 2d at 270. Although laws which impose taxes require strict construction, in order to effectuate the intent of the legislature, they must be given a reasonable construction, without bias or prejudice against either the state or the taxpayer. *Northwest Airlines*, 295 Ill. App. 3d at 892. Where doubts exist, tax statutes will be construed most strongly against the government and in favor of the taxpayer. *Northwest Airlines*, 295 Ill. App. 3d at 892.

■ Pursuant to the Tax Act, a business which derives its income from multistate activities is taxed under the apportionment method. 35 ILCS 5/304(a) (West 1996). The three-factor apportionment formula is the most common method. The three factors, calculated in percentages or fractions to apportion income, are: Illinois property in proportion to all property; Illinois payroll in proportion to all payroll; and Illinois sales in proportion to all sales, with the sales factor being given double weight. 35 ILCS 5/304(a) (West 1996). The average of these figures represents the portion of the taxpayer's business activity attributable to Illinois and therefore the share of business income subject to state tax. 35 ILCS 5/304(a) (West 1996). The multifactor formula based on property, payroll and sales is applicable to most taxpayers, but there are exceptions. The statute excepts certain businesses from using this apportionment formula, such as insurance companies, financial organizations and businesses "furnishing transportation services." 35 ILCS 5/304(b), (c), (d) (West 1996). Businesses providing transportation services are subject to a single-factor apportionment formula under section 304(d).[2] Therefore, the income of such businesses is apportioned based on the ratio of revenue miles in Illinois to

---

[2]Section 304(d) of the Tax Act provides:

"(d) Transportation services. Business income derived from furnishing transportation services shall be apportioned to this State in accordance with paragraphs (1) and (2):

(1) Such business income (other than that derived from transportation by pipeline) shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is the revenue miles of the person in this State, and the denominator of which is the revenue miles of the person everywhere. For purposes of this paragraph, a revenue mile is the transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration. Where a person is engaged in the transportation of both passengers and

revenue miles everywhere, with a revenue mile being defined as the "transportation of 1 passenger or 1 net ton of freight the distance of 1 mile for a consideration." 35 ILCS 5/304(d)(1) (West 1996).

The term "furnishing transportation services" is not defined by either the Tax Act or the Department's regulations. TTX argues that the totality of the facts and circumstances of its operations and relationship with the railroad industry make clear that TTX furnishes transportation services within the terms of section 304(d).

TTX maintains that the circuit court failed to make an appropriate inquiry of how the railroad industry works in order to appropriately decide the issues in this case. It asserts that railroads as common carriers are obliged to provide cars to shippers to move their freight. TTX was formed as a means for the railroad industry to meet its car service obligations with respect to flat cars. To make an adequate inquiry into whether TTX is directly or indirectly engaged in providing transportation service under the Tax Act, the functioning of TTX, how it is compensated for the use of its cars, and what transportation consequences arise out of its relationship with the railroad industry should have been considered by the court. In addition to its many close ties to the actual transportation of freight by rail, TTX asserts that its income is directly related to and dependant on the movement of freight, it receives full *per diem* and mileage payment only when its cars are loaded or moving to or from their destinations; and it serves as an integral part of the entire intermodal transportation system, performing much more than holding title to

freight, the fraction above referred to shall be determined by means of an average of the passenger revenue mile fraction and the freight revenue mile fraction, weighted to reflect the person's

(A) relative railway operating income from total passenger and total freight service, as reported to the Interstate Commerce Commission, in the case of transportation by railroad, and

(B) relative gross receipts from passenger and freight transportation, in case of transportation other than by railroad.

(2) Such business income derived from transportation by pipeline shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is the revenue miles of the person in this State, and the denominator of which is the revenue miles of the person everywhere. For the purposes of this paragraph, a revenue mile is the transportation by pipeline of 1 barrel of oil, 1,000 cubic feet of gas, or any specified quantity of any other substance, the distance of 1 mile for a consideration." 35 ILCS 5/304(d) (West 1996).

property, supplying cars and receiving payments unconnected to the underlying transportation taking place with respect to those cars.

The Department counters that TTX is not a shipper; it is in the business of providing cars to others for shipping freight. Because railroads are in the business of shipping persons or freight, not interchanging cars, as is TTX, the Department maintains it is the act of shipping of freight or the transporting of passengers which was the "transportation service" contemplated by section 304(d). The Department also argues that whether TTX is a lessor of cars and whether the fees it receives are formally "rent" is immaterial, where the material fact is that it does not receive income as a shipper but rather as a provider of cars to carriers.

The Department further submits that, under the car pooling agreement, TTX is compensated for its cars whether "loaded or empty." The only time a carrier pays less than the full *per diem* charge is when a car is "neither under load nor in movement (loaded or empty) at any time during the day." Because TTX gets paid, regardless of whether or not its cars are carrying freight, it cannot be considered a common carrier for tax purposes.

The Department concludes that the reasonable construction of section 304(d) requires that the phrase "furnishing transportation services" be limited to a carrier of freight or passengers. It asserts the undisputed facts in this case are that TTX is a private car line and not a carrier of freight or passengers. Therefore, no matter how valuable its services may be to its railroads, TTX does not qualify for single-factor apportionment under section 304(d).

■ From the respective assertions of the parties, it is clear that there was sufficient evidence in the record from which reasonable inferences could be drawn that TTX provides services substantially similar to "transportation services" dispensed by railroads and those services should be evaluated with railroad activities as points of reference. This is true particularly where, as in the present case, no statutory definition of the quintessential phrase, "furnishing transportation services," has been enacted by the legislature, nor by the Department's regulations, nor has any case law been presented in this connection.

Based upon the foregoing, the circuit court should have denied summary judgment to the Department. There exists a genuine issue of triable, material fact as to whether TTX is "furnishing transportation services," within the meaning of section 304(d). Because reasonable differing inferences can be drawn from the undisputed facts in light of the very unique relationship TTX has to the railroad industry, disposing of the issues by summary judgment was inappropriate in this case.

This cause is remanded for an evidentiary hearing on the issue of whether TTX is "furnishing transportation services" for purposes of Tax Act section 304(d).

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for an evidentiary hearing.

Reversed and remanded with directions.

THEIS, P.J., and GREIMAN, J., concur.