WESTCON/DILLINGHAM MICROTUNNELING *et al.*, Plaintiffs-Appellants, v. WALSH CONSTRUCTION COMPANY OF ILLINOIS, Defendant and Third-Party Plaintiff-Counterdefendant (Lake County, Illinois, Third-Party Defendant; Glenbrook Excavating and Concrete, Inc., Intervening Counterplaintiff-Appellee).

Second District No. 2—00—0590

Opinion filed March 30, 2001.

Eugene G. Callahan and Matthew W. LaKoma, both of Callahan, Fitz-patrick, LaKoma & McGlynn, of Oak Brook, and Harry C. Lee, of Law Office of Harry C. Lee, of Chicago, for appellants.

John J. Foley and Daniel J. Schairbaum, both of Maurides & Foley, L.L.C., of Chicago, for appellee Glenbrook Excavating & Concrete, Inc.

James R. Carr, of Holland & Knight, L.L.P., of Chicago, for appellee County of Lake.

JUSTICE GROMETER delivered the opinion of the court:

The circuit court of Lake County entered an order releasing certain funds to Glenbrook Excavating and Concrete, Inc. (Glenbrook). These funds were released to satisfy a lien asserted under section 23 of the Mechanics Lien Act (Act) (770 ILCS 60/23 (West 1998)) arising out of a construction project for Lake County on which Glenbrook was a subcontractor. Westcon/Dillingham Microtunneling, a joint venture of Westcon Microtunneling and the Dillingham Construction Company (collectively, Westcon), was a second subcontractor on the project and had previously asserted its similar lien and now appeals the circuit court's order. We affirm.

## BACKGROUND

Walsh Construction Company of Illinois (Walsh) contracted with Lake County to install a sewer system. Westcon, the plaintiff-appellant, then entered into a contract with Walsh whereby Westcon was to install approximately 9,000 linear feet of sewer line. Both contracts provided that a party would be entitled to additional compensation if, during the course of installation, it encountered subsurface conditions of an unusual nature. In its complaint, Westcon alleged that it encountered excessive boulders while installing the line, causing Westcon to perform additional work. Westcon further alleged that it

provided notice of these conditions, as required under the contract, and the county responded that Westcon's claims for additional payments would be reviewed and compensated on a case-by-case basis. Westcon sent notice of its claim for a mechanics lien to Lake County on August 18, 1998. The notice stated that Westcon was entitled to a $266,484.85 "payment for retention," and $1,048,581.61 for additional work performed due to differing site conditions.

Westcon filed two actions in November 1998, which were subsequently consolidated. The first action was a two-count complaint naming Walsh as defendant. In count I of the complaint, Westcon sought to foreclose a mechanics lien it had asserted against funds held by Lake County. Count II sought recovery on a contract theory from Walsh. The second was an action on a contractor's bond, naming Walsh and its surety as defendants. Walsh filed a third-party complaint against Lake County, seeking indemnity in the event Walsh was held liable to Westcon.

On May 13, 1999, Westcon filed a motion seeking to compel Lake County to release $266,484.85 of the amount it was claiming. The motion was granted, with all parties in agreement. Glenbrook was not a party at this time. The court's order provided that Westcon's mechanics lien would be reduced by this amount. In its prayer for relief, Westcon explicitly sought to reserve its right to seek compensation for the additional work performed on the sewer project.

On February 14, 2000, Glenbrook filed a petition to intervene. Like Westcon, Glenbrook was a subcontractor on the sewer construction project. Glenbrook alleged that it was owed $427,323.31 for work on the sewer system. On the same day, Glenbrook filed a motion to release this amount. Glenbrook had previously notified Lake County of its claim for a mechanics lien on February 8, 2000.

On March 27, 2000, Lake County filed a motion for leave to deposit the remainder of the funds, which it had retained in response to Westcon's and Glenbrook's liens, with the clerk of the court. The county stated that it had retained $769,395.97, which was the amount that remained due on the original contract. Westcon opposed this motion, arguing that section 23 of the Act required the county to deposit an amount sufficient to satisfy all liens. In light of Westcon's claim for compensation for additional work performed, the amount the county sought to deposit would have been insufficient.

On April 18, 2000, the trial court granted Lake County's motion to deposit with the clerk of the court the balance of the funds it had retained. This order has not been appealed. The court noted that allowing this motion would not prejudice Westcon. Regarding Glenbrook's motion to release funds, the court indicated that it considered

Westcon's earlier receipt of funds pursuant to its own motion to release as a waiver of any objection to Glenbrook's motion. The trial court allowed Westcon 30 days to return these funds to the court clerk so that they could be proportionally distributed. Westcon declined to do so.

On May 19, 2000, the trial court granted Glenbrook's motion to release funds. The court termed this order a "turnover order." In ruling, the court noted that Westcon had received all amounts due to it under the original contract. The court noted that the additional amount Westcon was claiming as a result of unusual subsurface conditions was, in actuality, a claim for an amount outside the original contract. Thus, this claim was for funds other than those previously withheld by the county. As such, Westcon's claim involved a new and separate fund that the county would have to furnish if Westcon were to succeed on its contract claim. The court stayed the enforcement of this order until June 1, 2000, on Westcon's motion.

## ANALYSIS

As a preliminary matter, we must address Glenbrook's contention that this court lacks jurisdiction to decide this appeal. Glenbrook asserts that Westcon's notice of appeal was premature. The notice was filed on May 31, 2000. On May 19, 2000, the court entered its order releasing funds to Glenbrook; however, the court stayed the enforcement of this order until June 1, 2000. According to Glenbrook, the trial court's judgment did not become final until the date it became effective. Since Westcon filed its notice before this date, Glenbrook argues its notice was premature.

■ Supreme Court Rule 303(a) provides that a notice of appeal must be filed "within 30 days after the entry of the final judgment appealed from." 155 Ill. 2d R. 303. However, where a timely, posttrial motion directed against the judgment has been filed, the notice must be filed within 30 days of the order disposing of that motion. 155 Ill. 2d R. 303. Compliance with this rule is necessary to vest the appellate court with jurisdiction. *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189 (2000). For the purpose of this rule, a posttrial motion directed against the judgment is one that requests one of the types of relief set forth in section 2—1203 of the Code of Civil Procedure (735 ILCS 5/2—1203 (West 1998)). *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 461 (1990). Section 2—1203 allows parties to file motions for rehearing, retrial, modification of the judgment, or vacation of the judgment. 735 ILCS 5/2—1203 (West 1998). Westcon's motion to stay the enforcement of the trial court's "turnover order" sought none of the types of relief set forth in section 2—1203. Thus, it was not a posttrial motion within the meaning of Rule 303. See *Giammanco v. Gi-*

*ammanco*, 253 Ill. App. 3d 750, 755 (1993). An order staying the enforcement of a judgment is collateral to the judgment and does not affect or alter the issues on appeal. See *In re Estate of Goodlett*, 225 Ill. App. 3d 581, 587 (1992). In other words, this motion, and the resulting order, were not directed against the judgment. Thus, the fact that the notice of appeal was filed while the enforcement of the judgment was stayed does not deprive this court of jurisdiction. Westcon properly filed its notice of appeal within 30 days of the trial court's "turnover order."

Turning to the merits of this appeal, we must first determine whether the trial court had the authority to order funds to be released to Glenbrook. Westcon contends that it did not. According to Westcon, the plain language of the statute governing liens against public funds requires that funds sufficient to satisfy a lien be withheld until "final adjudication of the suit is had." 770 ILCS 60/23(b) (West 1998). We disagree.

In construing a statute, the primary goal is to give effect to the intent of the legislature. *Country Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 316 Ill. App. 3d 161, 164 (2000). The plain language of the statute is the best indication of the legislature's intent. *Premier Property Management, Inc. v. Chavez*, 191 Ill. 2d 101, 121 (2000). A statute should be construed so that none of its language is superfluous or meaningless. *TTX Co. v. Whitley*, 313 Ill. App. 3d 536, 543 (2000). Where a statute contains both general and specific provisions, the specific provision controls to the extent that it is applicable. *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992). Statutory construction is a question of law. *Northwest Airlines, Inc. v. Department of Revenue*, 295 Ill. App. 3d 889, 892 (1998).

Section 23(b) of the Act allows a subcontractor working on a public improvement project to assert a lien against payments due or becoming due the general contractor. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 164-65 (1998). Once a lien is asserted, the public body must withhold sufficient funds to cover the amount of the lien. *Consolidated Construction Co. v. Malan Construction Corp.*, 42 Ill. App. 2d 272, 276 (1963). If the subcontractor claiming a lien files a complaint for an accounting within 90 days, "the amount claimed shall be withheld until the final adjudication of the suit is had." 770 ILCS 60/23(b) (West 1998). The statute goes on to state:

> "Provided, that the clerk or secretary, as the case may be, to whom a copy of the complaint is delivered as herein provided may pay over to the clerk of the court in which such suit is pending a sum sufficient to pay the amount claimed to abide the result of such

> suit and be distributed according to the judgment rendered or other court order." 770 ILCS 60/23(b) (West 1998).

Thus, the public body has the option of retaining the funds itself or depositing them with the clerk of the court. In the present case, Lake County chose the latter option.

Once the retained funds are in the possession of the clerk of the court, the plain language of the statute states that they may be distributed by an order of the court. That the statute refers to both "judgment[s]" and "other court order[s]" indicates that the order may be something less than a final judgment. Any other interpretation would render "other court order" mere surplusage, which would violate a basic principle of statutory construction. See *TTX Co.*, 313 Ill. App. 3d at 543. Furthermore, because specific provisions take precedence over general provisions (see *Villarreal*, 152 Ill. 2d at 379), the portion of the statute stating funds may be distributed by "other court order" controls where, as here, the funds are in the possession of the court clerk. Westcon's reliance on the portion of the statute stating funds must be held until final adjudication is misplaced. This language appears in the portion of the statute that applies when the public body is holding the funds. It does not occur in the portion of the statute addressing what shall take place when the funds are deposited by the public body and held by the clerk of court.

Without explanation, Westcon asserts that the portion of the statute allowing disbursement by "other court order" (770 ILCS 60/23(b) (West 1998)) must be read in context and that such a reading clearly demonstrates this language applies only where there is but one lienholder. We are unable to discern Westcon's meaning. We note that the language Westcon relies on to support its argument that funds must be withheld until final judgment is part of the same passage. Assuming Westcon is correct, then the "final adjudication" language (770 ILCS 60/23(b) (West 1998)) it relies on is also inapplicable when more than one lienholder is involved. Because the plain language of section 23(b) states that funds deposited with a court clerk may be released by "other court order," we hold that the trial court had the authority to release funds held by the clerk with an order issued prior to final judgment.

■ Having concluded that the trial court had the authority to release the funds in question, the question remains as to whether the court exercised this authority in an appropriate manner. Although we would affirm on a less deferential standard of review, we conclude that the abuse-of-discretion standard is proper here. We emphasize that a trial court's discretion is limited to fashioning an appropriate remedy. The question of whether a lien exists under section 23 is not a matter

within the discretion of a trial court. See *Prior v. First National Bank & Trust Co.*, 231 Ill. App. 3d 331, 333 (1992). In this case, the court's order was similar to a mandatory injunction, ordering the clerk to release funds to Glenbrook. The propriety of an injunction is reviewed under the abuse-of-discretion standard. *People v. Studio 20, Inc.*, 314 Ill. App. 3d 1000, 1004 (2000). Furthermore, as will be seen below, the trial court possessed the discretion to order an appropriate remedy.

■ While numerous cases have discussed the procedures a plaintiff must follow to obtain relief under section 23 of the Act, few have addressed the remedies available to such plaintiffs. The purpose of the Act is to protect those who, in good faith, have furnished material and labor for the construction of buildings or public improvements. *Premier Electrical Construction Co. v. American National Bank*, 276 Ill. App. 3d 816, 821 (1995). Section 39 of the Act states that "[t]his act is and shall be liberally construed as a remedial act." 770 ILCS 60/39 (West 1998). Nevertheless, because the rights created are statutory and in derogation of common law, the technical and procedural requirements necessary for a party to invoke the protection of the Act must be strictly construed. *Prior*, 231 Ill. App. 3d at 333. But see *Walker Process Equipment v. Advance Mechanical Systems, Inc.*, 282 Ill. App. 3d 452, 455 (1996) (noting that courts have been willing to consider substantial-compliance arguments despite strict construction of the procedural provisions of the Act where a technical construction would undermine its purposes). Once a plaintiff has complied with the procedural requirements upon which a right to a lien is based, the Act should be liberally construed in order to accomplish its remedial purpose. *Delaney Electric Co. v. Schiessle*, 235 Ill. App. 3d 258, 265 (1992). Accordingly, once a lien exists, a court has discretion in shaping a remedy for claims brought under section 23. See *Schick-Johnson Co. v. Malan Construction Corp.*, 49 Ill. App. 2d 277, 285 (1964).

■ It is well established that the creation of a mechanics lien is entirely governed by the Act, and the rules of equity jurisprudence are irrelevant at this stage. *Wingler v. Niblack*, 58 Ill. App. 3d 287, 289 (1978); *Wise v. Jerome*, 5 Ill. App. 2d 214, 221 (1955); see also *Hill Behan Lumber Co. v. Marchese*, 1 Ill. App. 3d 789, 792 (1971) ("We are unable to find any authority which would grant an equitable lien in a situation where it would have been appropriate to impose a mechanic's lien had there been compliance with the statute"); *Gunther v. O'Brien Brothers Construction Co.*, 369 Ill. 362, 370 (1938) ("Mechanics' liens are statutory, and all that may be considered in determining whether they exist or not, is what the statute creating them contains"). However, equitable principles are relevant in crafting an appropriate remedy. Section 23 provides that, after a subcontractor gives notice of

a lien, it must institute an action for an accounting against the general contractor within 90 days. 770 ILCS 60/23(b) (West 1998). An accounting is an equitable action. *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 555 (1993). Thus, the plain language of the statute leads a court into the realm of equity once the statutory procedures for creating a lien have been observed.

■ In fashioning a remedy, courts have broad discretion to grant the relief that equity requires. *Tully v. Edgar*, 286 Ill. App. 3d 838, 847 (1997). Relevant considerations include both what is fair and what is workable. *In re Marriage of Rogers*, 283 Ill. App. 3d 719, 723 (1996). Any prejudice inuring to a party must be taken into account. *Rosewood Corp. v. Transamerica Insurance Co.*, 8 Ill. App. 3d 592, 597 (1972). Additionally, courts may consider the relative benefits and hardships to the parties in crafting an appropriate remedy. *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 841 (1993).

■ In the present case, the trial court grounded its decision to release funds to Glenbrook on several bases. The court observed that Westcon had received all that it was due under the original contract and that the amount it was now claiming was for additional work performed. In fact, Westcon received the last of the money it was due on the original contract through a motion to release funds, like the one brought by Glenbrook that is at issue here. Glenbrook, conversely, had not been paid for all of its work under the original contract and was not claiming compensation for additional work. The trial court noted that Westcon had an alternate avenue for recovery through the contract action it had instituted against Walsh and that any amount coming due as a result of that action would be subject to a lien. Furthermore, Westcon's recovery on the contract would not be limited to the funds held by the court clerk. Alternatively, if Westcon does not prevail in its contract action, preclusion principles would prevent it from claiming any of these funds. Thus, Westcon suffered no prejudice because of the court's order. A contrary order would have worked a hardship against Glenbrook in denying it access to its compensation while being of no value to Westcon.

Westcon points out that Glenbrook had alternate means to seek recovery as well. However, Glenbrook's claim to the released funds was undisputed. Westcon's claim for additional compensation was already the subject of litigation. While there was no need for Glenbrook to engage in further litigation, Westcon needed to bring a contract action in order to prove its entitlement to further compensation. Although both parties could have sought recovery through alternate means, Westcon was in a position where it had to do so. Thus, the fact that Glenbrook could have instituted other actions has little bearing

on this case. There is no reason to require Glenbrook to wait to receive what it is due while Westcon litigates its claim for additional compensation.

Westcon argues that the trial court ignored the plain language of section 23 and instead relied on its "own notions of equity" in releasing funds to Glenbrook. Westcon cites two case in support of its argument; however, both are distinguishable. The first involved an interpretation of a portion of the Illinois Insurance Code (215 ILCS 5/187 et seq. (West 1998)). *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d 411 (1998). In that case, the trial court's rulings were found to be contrary to the underlying purpose of the Insurance Code. *In re Liquidation of Coronet Insurance Co.*, 298 Ill. App. 3d at 418. In the present case, the trial court's order was consistent with the purpose of the Act, which is to protect those who, in good faith, have furnished material and labor for the construction of public buildings or improvements. *Premier Electrical Construction Co.*, 276 Ill. App. 3d at 821. The trial court's order furthered this purpose regarding Glenbrook while thwarting it in no way regarding Westcon. Thus, the trial court was not relying on its own notions of equity. Rather, it was exercising its discretion in a manner consistent with the purposes of the Act.

The second case involved the interpretation of the provisions of a pension plan. *Siss v. United States Steel Corp.*, 34 Ill. App. 3d 62 (1975). In that case, the appellate court noted that a court has no power to stretch the meaning of words to make the plan conform with its own notion of equity. *Siss*, 34 Ill. App. 3d at 66. The trial court in the present case did not engage in any such exercise. In fact, in selecting a remedy, the trial court was not interpreting the statute; it was exercising its discretion. This exercise of discretion was consistent with the purpose of the Act and the legislature's dictate that these liens be resolved in an accounting action.

Finally, we find no merit in Westcon's argument that the trial court's order constituted a preference between lienholders in violation of section 23(d) (770 ILCS 60/23(d) (West 1998)). The statute provides that "all shall be paid pro rata in proportion to the amount due under their respective contracts." 770 ILCS 60/23(d) (West 1998). Based on the facts of this case, this provision does not apply. If Westcon prevails in its contract action, additional funds will be available to satisfy that claim. If unsuccessful, Westcon has already received all that it was due. Given the facts of this case as presented to us, neither Westcon nor Glenbrook will be limited to a *pro rata* recovery of the funds held by the clerk. Furthermore, we note that section 23(d) concerns the liability of public officials who fail to withhold funds after being notified

of a claimant's lien. Thus, the language mandating *pro rata* recovery appears in a portion of section 23 not at issue in the present case.

## CONCLUSION

In light of our disposition, we need not address whether Westcon's refusal to redeposit monies it received from its earlier motion to release funds constituted a waiver of any objection to Glenbrook's subsequent motion. We do not understand what Westcon was seeking to accomplish in opposing Glenbrook's motion to release funds and pursuing this appeal. Whether Westcon succeeds or fails in its contract action, adequate funds will be available to satisfy any recovery. In either event, Glenbrook would eventually receive the full amount it claimed. This court can perceive no reason to make Glenbrook wait to receive the amount it was due.

Accordingly, the order of the circuit court of Lake County releasing funds to Glenbrook is affirmed.

Affirmed

HUTCHINSON, P.J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur because I wish to emphasize a point that the majority decision does not address but that was raised below, ruled upon by the court below, and simplistically disposed of by the cause and this appeal.

The appellant received a payment based upon its lien claim but strenuously argues that another lien claimant is not entitled to such a distribution. The appellant's brief states that the distribution was invalid because the pertinent statute does not authorize such a distribution. The trial court considered the argument, recognized the patent inconsistency, and suggested that the appellant should return the distributed funds. The appellant refused and continues to claim that not only is the refusal not a waiver but that the position is not inconsistent. The argument of the appellant seems to be that there was an agreement between the parties to distribute the funds to it *prior* to the appearance of the appellee in the proceedings. The appellant does not cite any authority that allows a distribution, in violation of the controlling statute, merely because the parties agreed to "disregard" the statute. The trial court called this patent inconsistency a waiver. I submit it is called judicial estoppel.

Judicial estoppel provides that, when a party assumes a particular position in a legal proceeding, that party is estopped from asserting a

contrary position in a subsequent proceeding. The doctrine applies only when the following elements are established: (1) two positions have been taken by the same party; (2) the positions were taken in separate or quasi-judicial administrative proceedings; (3) the party intended that the trier of fact accept the truth of the facts alleged in support of the positions; (4) the party was successful in asserting the first position and received some benefit in the first proceeding; and (5) the two positions were inconsistent. *People v. Coffin*, 305 Ill. App. 3d 595, 598 (1999). All of the elements are present in this case. Regarding the second element, the requirement that the positions be taken in different proceedings is to provide finality to the position taken in the first proceeding. Appellant's rationalization regarding its different positions is that the parties agreed to the distribution. Without the appellee's participation, this argument effectively bifurcates this proceeding into two proceedings, namely, the "pre" and "post" appearances by the appellee. This attempt to hide the patent inconsistency, if the proceeding was considered one proceeding, is not ameliorated by attempting to claim that there are essentially two proceedings: one with an agreement and one without an agreement.

Although I agree with the majority opinion, I feel that the patent deficiency of the appellant's inconsistent position is also dispositive.