Arthur BEYER; Catherine A. Beyer, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–2843.

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1990.

Decided Oct. 15, 1990.

Charles W. Hall, Fulbright & Jaworski, Houston, Tex., argued (Steven E. Segal, John R. Allender, Mary Frances Lapidus, Fulbright & Jaworski, Houston, Tex., Moe K. Karash, Forest Hills, N.Y., Keith A. Jones, Washington, D.C., on the brief), for petitioners-appellants.

Teresa Thomas Milton, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Gilbert S. Rothenberg, Tax Div., U.S. Dept. of Justice, Washington, D.C., on the brief), for respondent-appellee.

Before WIDENER, Circuit Judge, McMILLAN, Senior District Judge for the Western District of North Carolina, sitting by designation, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.

JOSEPH H. YOUNG, Senior District Judge:

This appeal presents an issue of first impression in this court concerning the carry-over provision of § 163(d)(2) of the Internal Revenue Code (IRC). The Tax Court held that the carry-over is subject to an implicit limitation equal to the taxpayer's total taxable income for the year in which the expense was incurred. After reviewing the language of the statute and the legislative history behind the carry-over provision, we conclude the Congress intended no such limitation and reverse the judgment below.

**154**

I.

In 1981, Arthur and Catherine Beyer, the taxpayers in this case, incurred substantial investment interest expense as defined by IRC § 163(d)(3)(D). Under IRC § 163(d)(1), the Beyers were able to claim a deduction for such investment interest, but for no more than the sum of $10,000 plus their net investment income for the current year. Interest expense above that amount was disallowed. Because of this limitation, taxpayers were not allowed to claim $151,849 in interest expenses as a current deduction for 1981. However, IRC § 163(d)(2), the provision at issue here, provided that "[t]he amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year." Pursuant to this section, taxpayers carried over the $151,-849 in investment interest to 1982.

In 1982, taxpayers' investment interest expense again exceeded the limitation on deductions for the current year (by $11,-006), preventing the use of the deduction carried over from the previous year. Taxpayers carried over the total interest expense disallowed in 1981 and 1982 ($162,-855) and claimed it as a current deduction in 1983 when they had a surplus of net investment income.

In reviewing taxpayers' returns, the Commissioner of the Internal Revenue Service took the position that taxpayers could carry over disallowed investment interest expense only to the extent that the expense did not exceed the taxpayers' total taxable income for the year in which the expense was incurred. The Beyers' taxable income in 1982 was only $8,095, limiting their carry-over to 1983 to that amount. The taxpayers petitioned for review in the United States Tax Court.

The Tax Court agreed with the Commissioner that the investment interest carry-over was limited to the taxpayers' taxable income in the year in which the expense was incurred. The court held, however, that the taxable income limitation on the carry-over did not apply in subsequent years. Under this view, the taxpayers could indefinitely carry over their disallowed interest expense from 1981 of $151,-849, regardless of their total taxable income in subsequent years, because they had more than $151,849 in total taxable income in 1981. The Tax Court thus allowed taxpayers to carry over their entire disallowed interest expense from 1981 to 1983, but limited their carry-over from 1982 to the 1982 total taxable income of $8,095.

II.

 As with any question of statutory construction, we turn first to the language of the statute. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). During the tax years at issue, § 163(d) of the Code read, in pertinent part, as follows:

(d) *Limitation on interest on investment indebtedness*—

(1) *In general.*—[T]he amount of investment interest ... otherwise allowable as a deduction under this chapter shall be limited, in the following order, to—

(A) $10,000 ..., plus

(B) the amount of the net investment income....

(2) *Carryover of disallowed investment interest.*—The amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year.

(3) *Definitions.*—For the purposes of this subsection ...

\* \* \* \* \* \*

(E) *Disallowed investment interest.* —The term "disallowed investment interest" means with respect to any taxable year, the amount not allowable as a deduction solely by reason of the limitation in paragraph (1).[1]

The carry-over provision allows taxpayers to preserve investment interest deductions that would have been "allowable" ex-

---

1. This Code provision was originally passed in 1969. Congress amended it in 1976 and again in 1986. The version quoted above was in effect during the 1981–83 tax years.

cept for the requirement that the deductions be matched to investment income. It does not create new deductions. If another provision in the Code bars a deduction, such as the prohibition in IRC § 265 against deducting investment interest expense incurred to purchase tax-free obligations, then such interest may not be carried over under § 163(d)(2). The investment interest expense incurred by the Beyers was clearly not allowable under IRC § 163(d)(1). The question presented in this appeal is whether it was "otherwise allowable" because § 163(d)(1) was the "sole" basis for excluding the deduction.

The Commissioner admits that no express language in the Code provides any independent limitation on the interest expense deductions claimed by the Beyers. Rather, the Commissioner argues that there is an inherent limitation built into the tax system itself because a taxpayer may not claim more deductions in a given year than taxable income (a negative net income still equates to a tax of zero dollars). The Commissioner points out that prior to 1969, when the carry-over provision was originally passed, taxpayers could deduct investment interest expense against all taxable income, but any interest expense above that amount was forever lost as a deduction (because there was no carry-over). Allowing taxpayers to carry over interest expense in excess of total taxable income would, the Commissioner argues, create a new deduction not intended by the Congress.

Taxpayers argue that nothing in the statute limits the carry-over to total taxable income and that the courts should not create such a limitation without some manifestation of Congressional intent. Taxpayers acknowledge that, prior to the enactment of the carry-over provision, a taxpayer could not *claim* deductions for investment interest in excess of total taxable income. The inability to claim a deduction, however,

does not necessarily mean that the deduction is not "allowable."

In other contexts, the Code distinguishes between "allowable" deductions, those available to a taxpayer whether or not they are actually claimed on a tax return, and "allowed" deductions, those actually claimed by the taxpayer on a particular return. For example, IRC § 1016(a)(2) requires an adjustment to basis in property for the amount "allowed" as deductions on a tax return, "but not less than the amount *allowable*" whether or not the allowable amount was claimed on a return. (Emphasis added.)[2]

The carry-over provision in § 163(d) defines "disallowed investment interest" as any amount not "allowable" as a deduction "solely" because of the limitation concerning investment income. Except for the investment income limitation in IRC § 163(d), all of the investment interest expense incurred by the Beyers was "allowable" as a deduction under the above definitions. While some of those interest deductions may not have been "allowed" because they exceeded taxable income, they were nonetheless "allowable."

This interpretation of the statute is consistent with the basic purpose of the investment interest deduction limitation and carry-over provisions. Tying the interest deductions to investment income prevents taxpayers from using the investment interest expense deduction as a tax shelter for non-investment income and encourages them to invest only in projects that will yield a profit aside from the tax benefits. Allowing taxpayers to carry over all unclaimed interest expense to future years allows them to match expenses with investment income that may not be realized for several years. By contrast, the limitation urged by the Commissioner, based on earned income, arbitrarily prevents taxpayers with little earned income from reaping the benefit of the deduction for ventures profitable in the long run, but with a low

---

**2.** In *Day v. Heckler,* 735 F.2d 779, 784 (4th Cir.1984), we noted that "[t]he distinction between an 'allowable' deduction and an 'allowed' deduction is not insignificant" and held that

failure to make a required election would prohibit certain expenses from being "allowed" as a deduction on a tax return even though they were generally "allowable."

initial payoff.[3] While individuals may ultimately claim more deductions than would have been available prior to the enactment of the investment income limitation and carry-over provisions, they will only be able to do so if their investments generate sufficient income.

We conclude that the language of the statute does not support the Commissioner's position. Nothing in the statute refers to a taxable income cap on the carry-over of investment interest, and the purpose of the statute to match investment income and expense does not indicate the need for such a limitation. Moreover, finding an inherent limitation based on taxable income does not seem consistent with the use of "allowable" deductions in other sections of the Code. As a result, unless Congress has expressed a clear intent to the contrary, we must hold that the carry-over provision applies regardless of the taxpayer's total taxable income for the year. *Cf. Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.").

### III.

We turn next to examine the legislative history of the statute to determine whether Congress expressed its intention regarding the position espoused by the Commissioner. The parties do not dispute the basic purpose underlying the investment interest expense limitation and the carry-over provision. As discussed above, Congress enacted the limitation on investment interest deductions to prevent taxpayers from using interest deductions to offset other income. The carry-over provision protects taxpayers with legitimate investments by allowing them to claim the interest deduction as

soon as the investment produces income. The result is a matching of investment income and expense that should encourage taxpayers to make investments that will yield a profit aside from tax benefits.

The dispute here focuses on whether Congress intended the carry-over provision to allow taxpayers to carry over interest deductions that they would not have been able to claim before the investment income limitation was enacted (*i.e.*, interest expense in excess of total taxable income). The legislative history reveals that at least some members of Congress explicitly considered this issue and agreed with the Commissioner's interpretation of the carry-over provision. A House Report for the 1969 bill states that:

> A carryover would not be available, however, for disallowed interest to the extent it exceeded the taxpayer's taxable income for the year....

H.R.Rep. No. 91–413, Pt. 1, 91st Cong., 1st Sess. at 72 (1969–3 Cum.Bull. 200, 246), *reprinted in* 1969 U.S.Code Cong. & Admin.News (83 Stat.) 1645, 1720. A similar statement appeared in the General Explanation of the Tax Reform Act of 1969 (the "Blue Book") and a House Report concerning the 1976 amendments.[4]

These statements standing alone might be dispositive, but several factors suggest that Congress did not intend such a limitation in the bill that was finally enacted. The House Report quoted above accompanied a bill which was rejected by the Senate and then modified in conference. The compromise version changed the definition of the carry-over from "amount *disallowed*" solely by § 163(d)(1) to the "amount not *allowable*." (Emphasis added.) The Conference Report for the modified bill explained that "[a]ppropriate modification is made for the carry-over of excess investment interest which may not be currently

---

3. The arbitrary nature of the Commissioner's interpretation is made even clearer by the Tax Court's application to this case. Under this application, the Beyers were able to carry over more than $150,000 in unclaimed interest expense from 1981 and claim it as a deduction in 1983 because they had substantial earned income in 1981 unrelated to their investments.

However, they were only allowed to carry over about $8,000 from 1982 because they had less taxable income, again for reasons unrelated to their investments.

4. *See* H.R.Rep. No. 94–658, 94th Cong., 1st Sess. at 104 (1976–3 Cum.Bull. (Vol. 2) 695, 796).

deducted...." H.R.Conf.Rep. No. 91–782, 91st Cong., 1st Sess. at 300, *reprinted in* 1969 U.S.Code Cong. & Admin.News 2392, 2414. Despite the explicit reference in the prior House Report, the Conference Report makes no mention of a limitation based on taxable income and suggests that the carry-over is open-ended.[5] In addition, the "Blue Book" report for the 1976 amendments states that disallowed interest deductions are subject to an "unlimited carry-over."[6]

■ Our reading of the legislative history leads to the conclusion that it contains inconsistent references with regard to an implicit limitation based on taxable income. Where the legislative history is inconclusive, it should not be relied upon to supply a provision not expressly in the statute. *United States v. American College of Physicians*, 475 U.S. 834, 846, 106 S.Ct. 1591, 1598, 89 L.Ed.2d 841 (1986). We therefore find that Congress did not intend to impose a limitation on the carry-over of investment interest based on taxable income.[7] Accordingly, we reverse the judgment of the Tax Court and hold that under IRC § 163(d)(2) the taxpayers in this case were entitled to carry over all investment interest expense not deducted because of the limitation in § 163(d)(1) regardless of their taxable income for the year.

REVERSED.

**5.** While the reference to an implicit taxable income limitation reappears in the "Blue Book" put out after the 1969 Act was passed, nothing in the legislative history explains why the Blue Book should have differed from the Conference Report on this issue. Taxpayers assert that the reference was "inadvertent" or "erroneous." We conclude only that the inconsistent references in the legislative history prevent a finding of clear Congressional intent to impose a cap on the carry-over provision based on taxable income.

**6.** *See* General Explanation of the Tax Reform Act of 1976, (H.R. 10612, 94th Cong., 2nd Sess., P.L. 94–455) at 103.

**7.** As a final consideration, we note that prior to this case the Commissioner did not appear to have interpreted the investment interest carry-over provision as limited by taxable income. The 1983 version of the form used to compute investment interest deductibility (Form 4952) contains no line or instruction to incorporate the asserted limitation on interest deductions based on taxable income. Nor had the Commissioner issued any regulations or rulings concerning this issue until this case (although this interpretation has since been published in Rev. Rul. 86–70, 1986–1 Cum.Bull. 83).