*In re* LACKS ESTATE

Docket No. 225414. Submitted December 4, 2001, at Grand Rapids. Decided March 4, 2003, at 9:05 A.M. Leave to appeal sought.

Mary P. Teets, Richard J. Lacks, and Kurt E. Lacks, petitioned the Kent County Probate Court, for a declaration that pursuant to MCL 205.232(1) of the Estate Tax Act, the petitioners were not liable for state estate taxes because application of the federal "tax on prior transfers" (TPT) credit, 26 USC 2013, to the petitioners' decedent's estate eliminated the estate's federal estate-tax liability. Respondent Michigan Department of Treasury argued that the plain language of the statute required payment of the state estate tax, despite the elimination of any federal tax liability. The court, Janet A. Haynes, J., concluded that the state was not entitled to any state estate tax if no estate tax was due the federal government as result of the federal TPT credit. The Department of Treasury appealed.

The Court of Appeals *held*:

1. Under MCL 205.232(1), it is the federal credit allowable for taxes paid to states that determines the amount owed for Michigan estate tax. The TPT credit and others like it are not credits for Michigan estate taxes, are unrelated to the allowable federal credit for state estate taxes, and are thus outside the purview of the statute.

2. Pursuant to the plain language of MCL 205.232(1), because the petitioners' decedent's estate did not owe any federal estate taxes after application of the TPT credit, the petitioners did not owe any state estate taxes under Michigan's current "pick up" estate-tax scheme.

Affirmed.

WILDER, P.J., dissenting, stated that he would reverse and hold that the plain language of MCL 205.232(1) requires the petitioners' decedent's estate to pay state estate taxes despite the elimination of the estate's federal estate-tax liability after the application of the TPT credit. The Legislature's use of the term "allowable" in MCL 205.232(1) indicates that irrespective of the credits actually utilized by an estate in determining federal estate-tax liability, estate-tax liability under Michigan law is specifically linked to credits allowed in § 2011 of the Internal Revenue Code (IRC), 26 USC 2011. Thus, the petitioners' use of the TPT credit to extinguish the estate's fed-

eral estate-tax liability did not render inapplicable, for purposes of calculating estate-tax liability under § 232(1), the credits "allowable" to the petitioners under § 2011 of the IRC. The order of the probate court should be reversed.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *Fredric A. Sytsma* and *Pamela J. Tyler*), for the petitioners.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Roland Hwang*, Assistant Attorney General, for the respondent.

Amici Curiae:

*Fraser Trebilcock Davis & Foster, P.C.* (by *Richard C. Lowe*), for the Probate and Estate Planning Section of the State Bar of Michigan.

*Clark Hill, PLC* (by *Joseph A. Bonventre*), for the Taxation Section of the State Bar of Michigan.

Before: WILDER, P.J., and GRIFFIN and SMOLENSKI, JJ.

GRIFFIN, J. In regard to the estate of Richard J. Lacks, Sr., deceased, respondent Michigan Department of Treasury appeals as of right an order of the probate court holding that the "the state is not entitled to any state estate tax if no estate tax is due the federal government as a result of the federal TPT [tax on prior transfers] credit." We affirm.

I

The decedent died on May 13, 1999, and was survived by his wife. His father, John P. Lacks, had died one month earlier on April 14, 1999. On January 14, 2000, the estate of John P. Lacks (JPL estate) filed federal, state of Michigan, and state of Florida estate-

tax returns, reflecting a sizeable taxable estate with resulting tax liability payable to the federal government, Florida, and Michigan. After payment of certain specific gifts by the JPL estate, the Richard J. Lacks estate (RJL estate) inherited fifty percent of the remaining assets of the JPL estate. By virtue of the inheritance, the RJL estate was charged with a fifty percent share of the taxes payable in the JPL estate.

The federal, Michigan, and Florida estate-tax returns for the RJL estate were due on February 13, 2000. Because of the assets received in the RJL estate from the JPL estate, and because Richard Lacks' widow filed a disclaimer of a portion of the assets of the RJL estate, the RJL estate became subject to federal estate tax.[1] Because John Lacks and Richard Lacks died within two years of each other (indeed only a month apart), and because the federal estate-tax liability to the RJL estate was attributable to the assets received from the JPL estate, the RJL estate qualified for a one hundred percent "tax on prior transfers" (TPT) federal tax credit under 26 USC 2013. The TPT credit calculated under § 2013 was greater than the federal tax liability of the RJL estate, and thus eliminated any federal estate tax payable by the RJL estate.

Petitioners, Mary P. Teets, Richard J. Lacks, Jr., and Kurt E. Lacks, brought the present action seeking a declaration that pursuant to the governing provision of the Estate Tax Act, MCL 205.232(1), petitioners were not liable for Michigan estate taxes where the application of the federal TPT credit to the RJL estate

---

[1] The RJL estate plan contained a marital-deduction formula that, absent the filing of the disclaimer, would have reduced the federal estate tax liability to zero.

eliminated the estate's federal estate-tax liability. Respondent argued that the unambiguous language of the statute required payment of the Michigan estate tax, even though the federal tax liability had been eliminated by virtue of the federal TPT credit. After a hearing on the petition, the probate court ruled in favor of petitioners. Respondent now appeals.

II

Petitioners and the amici curiae note that in 1993 the Legislature replaced Michigan's inheritance tax with a new estate tax.[2] Michigan's current estate-tax scheme is commonly described as a "pick up" estate tax. As explained by the amici:

> A pick up estate tax is one that generally does not increase the amount of an estate's combined Federal and state death tax liability over the amount of the estate's Federal estate tax liability, determined without regard to the state death tax credit. Instead, a pick up tax allows the state to take (to "pick up") all or a portion of the Federal estate tax liability that qualifies for the state death tax credit. See, *e.g.*, 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes, § 244, at 452 (1969). . . . In other words, a pick up tax is generally limited to a portion of the dollars that would, in the absence of the state estate tax, be paid as Federal estate tax.

---

[2] We note that in most respects, the estate-tax statutes of Michigan and Florida are similar. In this regard, the amici argue:

In the days of the Michigan inheritance tax, it cost more to die in Michigan than in Florida. Florida was our principal competitor in the death tax arena for the residency of Michigan citizens. The Michigan estate tax was modeled after the Florida estate tax in order to make Michigan more competitive with Florida.

In *Estate of Fasken*, 19 Cal 3d 412, 417-418; 563 P2d
832 (1977), the California Supreme Court provided a
succinct discussion of the history of the "pick up" tax
and its development as a response to the estate-tax
provisions of the Internal Revenue Code:

> Since 1916 section 2001 of the Internal Revenue Code has
> imposed a federal estate tax on all specifically nonexempt
> (see [IRC] §§ 2011-2014, 2052-2056) property owned by per-
> sons residing in the United States at the time of their death.
> In the early years following enactment of the federal estate
> tax, a backlash of opposition emerged in Congress as
> among various other high placed government officials to
> the very concept of the federal government taxing a per-
> son's property at death. Concurrent with this attitude of
> general resentment for the federal government's incursion
> into an area providing "a traditional source of revenue to
> the states" (Turner, *The Gross Estate and the Death Tax
> Credit* (1971) 28 Wash & Lee L Rev 254, 257 . . . ), several
> states nevertheless repealed long-standing death tax stat-
> utes, "this being done to induce wealthy persons to move
> within their borders." (Cogburn[, *The Credit Allowable
> Against the Basic Federal Estate Tax for Death Taxes Paid
> to State Statutes Enacted to Take Advantage Thereof—Con-
> stitutional Difficulty & Some Suggested Solutions* (1952)
> 30 N Car L Rev] 123.)
>
> Congressional response took form in the Revenue Act of
> 1924 (ch 234, § 301(b), 43 Stat 253, 304) giving birth to what
> is now commonly referred to as the federal estate credit for
> state death taxes. ([IRC] § 2011.) Section 2011, subdivision
> (a) of the Internal Revenue Code permits legal representa-
> tives of estates to deduct from the total federal estate tax
> obligation[5] a limited, scheduled[6] credit for all death taxes
> actually paid[7] to any state on account of property taxable as
> part of the gross federal estate.[8] Architects of the credit
> clearly intended individual states to benefit from its crea-
> tion, for section 2011 assures states a certain minimum of
> tax revenue at the expense of the federal treasury.

⁵ Section 2011, subdivision (a), provides, in relevant part: "The tax imposed by section 2001 shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or the District of Columbia, in respect of any property included in the gross estate . . . ." Deduction of the credit for state death taxes under section 2011 represents only one of five credits provided by the code. A decedent's estate may also deduct from the total federal estate tax bill varying amounts for federal gift taxes (§ 2012), estate tax on prior transfers (§ 2013), foreign death taxes (§ 2014), and death taxes on remainders (§ 2015).

⁶ See generally section 2011, subdivision (b). Beginning with a taxable estate (gross estate less exemptions and expenses) in excess of $40,000, section 2011, subdivision (b), provides for a credit for state death taxes of 0.8 percent. The largest percentage credit, 16 percent, is reached on a taxable estate totaling more than $10,040,000.

⁷ To qualify for a credit under section 2011, subdivision (a), a decedent's estate must actually incur some federal estate tax liability. The allowance of comparatively high federal estate tax exemptions enable relatively small estates to escape a federal tax even though there may be a substantial state death tax. Estates which fall into this category do not qualify for the federal credit and the state cannot access a pick-up tax. (See Maxwell, [Tax Credits and Intergovernmental Fiscal Relations (1962) p 25].)

⁸ This limitation means that death taxes paid on property subject to state but not to federal tax fail to qualify for the section 2011, subdivision (b) credit. (Treas Reg § 20.2011-1, subd (a); *Second National Bank of New Haven v United States*, [422 F2d 40 (CA 2, 1970)].)

III

In the present case, petitioners have no federal estate-tax liability because of a federal tax credit for a

previous federal tax on prior transfers. 26 USC 2013. This federal tax credit is allowed for federal estate taxes paid on a recent transfer of the estate's property. Specifically, 26 USC 2013(a) provides in part:

> The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property (including property passing as a result of the exercise or non-exercise of a power of appointment) to the decedent by or from a person (herein designated as a "transferor") who died within 10 years before, or within 2 years after, the decedent's death.

Because the timing of the deaths of Richard J. Lacks, Sr., and his father occurred near in time (John A. Lacks died on April 14, 1999; Richard J. Lacks, Sr., died on May 13, 1999), the estate of Richard J. Lacks, Sr., qualified for a one hundred percent TPT credit. After applying the TPT credit, the net result was that no federal estate tax was owed by the RJL estate.

Respondent contends that Michigan estate tax is owed for an estate that has no federal estate-tax liability by application of the TPT federal tax credit. We disagree on the basis of the plain language of our Michigan estate-tax provision.[3] *People v Borchard-Ruhland,* 460 Mich 278, 284-285; 597 NW2d 1 (1999). Further, we review de novo questions of statutory construction. *In re MCI Telecom Complaint,* 460 Mich 396, 413; 596 NW2d 164 (1999).

MCL 205.232(1) provides, in pertinent part:

---

[3] While we conclude that the probate court erred in finding the statute to be ambiguous, it is well settled that we will not reverse where the lower court reaches the right result for the wrong reason. *In re Jory,* 443 Mich 403, 425; 505 NW2d 228 (1993); *People v Lucas,* 188 Mich App 554, 557; 470 NW2d 460 (1991). The lack of ambiguity in the statute supports petitioners' claim that no state estate tax is owed under these circumstances.

> [T]ax is imposed upon the transfer of the estate of every
> person who at the time of death was a resident of this state.
> *The tax is equal to the maximum allowable federal credit*
> under the internal revenue code *for* estate, inheritance, leg-
> acy, and succession *taxes paid to the states.* [Emphasis
> added.]

Clearly, it is the *federal credit* allowable for taxes paid to the state that determines the amount owed for Michigan estate tax. However, the federal credit at issue is not a credit for Michigan estate taxes, but a federal tax credit for previous federal estate taxes paid on a recent transfer. 26 USC 2013. Because such a federal credit is unrelated to the allowable federal credit for state estate taxes, it is outside the purview of MCL 205.232(1). Similarly, we conclude other federal credits and deductions unrelated to the state estate-tax credit, such as the marital deduction, are also outside the scope of MCL 205.232(1).

We hold that respondent's position that state estate tax should be computed before and independent of federal deductions or credits is clearly contrary to our state and federal estate-tax scheme. *Estate of Turner v Dep't of Revenue*, 106 Wash 2d 649, 657; 724 P2d 1013 (1986) ("The present Washington ["pick up"] estate-tax scheme, unlike its predecessor statutes, is not intended to operate independently of the federal tax scheme. Rather, we find that Washington's estate tax scheme is intended to complement the federal scheme."). See also *Dickinson v Maurer*, 229 So 2d 247 (Fla, 1969), and *Estate of Fasken, supra* at 417-418 n 7. On this issue, we follow the result reached by both the Supreme Court of Washington and the Supreme Court of Florida.

Affirmed.

SMOLENSKI, J., concurred.

WILDER, P.J. *(dissenting).* I respectfully dissent. I would reverse and hold that the plain language of MCL 205.232(1) requires the Richard J. Lacks, Sr. (RJL) estate to pay a Michigan estate tax, despite the estate's application of the federal estate-tax credit permitted by 26 USC 2013 to eliminate its federal estate-tax liability.

I

The majority noted:

> Section 2011, subdivision (a) of the Internal Revenue Code (IRC) permits legal representatives of estates to deduct from the total federal estate tax obligation a limited, scheduled credit for all death taxes actually paid to any state on account of property taxable as part of the gross federal estate. *Architects of the credit clearly intended individual states to benefit from its creation, for section 2011 assures states a certain minimum of tax revenue at the expense of the federal treasury.* [*Estate of Fasken,* 19 Cal 3d 412, 417-418; 563 P2d 832 (1977) (emphasis added; citations omitted).]

Section 32(1) of the Michigan Estate Tax Act, MCL 205.232(1), establishes the state of Michigan "pick up" tax contemplated by section 2011 of the IRC and provides that

> [a] tax is imposed upon the transfer of the estate of every person who at the time of death was a resident of this state. The tax is equal to the maximum *allowable federal credit* under the internal revenue code *for estate, inheritance, legacy, and succession taxes paid to the states.* . . . [Emphasis added.]

This section should be read in conjunction with § 2a of the Michigan Estate Tax Act, MCL 205.202a. Subsection (1) of § 2a provides that

> [i]f the total of inheritance taxes levied . . . by this act . . . does not equal or exceed the maximum credit for state death taxes *allowable* to the estate . . . against the federal estate tax imposed . . . , there is [to be] levied . . . an additional . . . tax . . . equal to the differences between the maximum credit allowed and the tax otherwise imposed by this act. [Emphasis added.]

Subsection 202a(4) explains that "[t]he purpose of [§ 2a] is to obtain the maximum benefit of the credit allowed under the provisions of the federal estate tax and it shall be liberally construed to effect this purpose."

II

We are asked to determine in this case whether MCL 205.232(1) should be interpreted to eliminate estate-tax liability under Michigan law when the federal tax credit for previous federal estate taxes paid on a prior transfer of assets (the TPT credit), as calculated under § 2013 of the IRC, has operated to extinguish any federal estate-tax liability. I agree with the majority that MCL 205.232(1) is unambiguous, but cannot join with the majority in its application of the plain language of the statute to the facts herein.

Petitioners contend that because the RJL estate applied the federal TPT credit as defined in § 2013 of the IRC to eliminate its federal estate-tax liability, its liability for Michigan estate taxes is also extinguished. The majority agrees with this contention, reasoning that because the estate did not use the federal credit allowable for taxes paid to the states (as defined in

§ 2011 of the IRC) but used instead the TPT credit, no Michigan estate tax is owed because the federal credit actually used by the estate (the TPT credit) was outside the scope of MCL 205.232(1).

Unlike the majority, however, I would conclude that the calculation of estate-tax liability under Michigan law is not dependent on the credit or credits actually used by the estate to diminish or extinguish its federal estate-tax liability. The Legislature's use of the term "allowable" in MCR 205.232(1) is a significant indication that irrespective of the credits actually utilized by an estate in determining the federal estate-tax liability, estate-tax liability under Michigan law is specifically and directly linked to credits *allowed* in § 2011 of the IRC. Thus, petitioners' use of the TPT credit to extinguish the RJL estate's federal estate-tax liability does not render inapplicable, for purposes of calculating estate-tax liability under MCL 205.232(1), the credits *allowable* to petitioner under § 2011 of the IRC.

The fact that the TPT credit and the maximum allowable credit for state estate taxes under § 2011 of the IRC are different credits, strengthens, rather than weakens, respondent's argument that the computation of the Michigan estate tax is independent of federal deductions or credits applied by the estate in determining its federal estate-tax liability. It is precisely because MCR 205.232(1) defines the Michigan estate tax as equal to the allowable IRC credit "for estate, inheritance, legacy, and succession taxes paid to the states" that the direct link between the Michigan estate tax and the credits "allowable" by § 2011 of the IRC is clear. MCR 205.232(1) does not refer in any manner to the credits permitted under § 2013 of the IRC or, for that matter, to the other three credits avail-

able to reduce an estate's federal estate-tax liability (§ 2012 regarding federal gift taxes, § 2014 regarding foreign death taxes, and § 2015 concerning death taxes on remainders; see discussion in *Estate of Fasken, supra* at 418 n 5). Thus, application of the TPT credit or any other federal credit to extinguish federal estate-tax liability has no effect on the calculation of estate tax liability under MCR 205.232(1).[1]

I would reverse.

---

[1] I further disagree with the majority's view that the TPT credit is "unrelated" to the allowable federal credit for state estate taxes, because the TPT credit cannot be calculated without specific consideration of the credit for state estate taxes. See 26 USC 2013(c)(1)(A), (B) ("The [TPT] credit . . . shall not exceed the amount by which . . . the estate tax imposed by section 2001 . . . [*after deducting the credits provided for in section[] . . . 2011 . . .*] computed without regard to this section, exceeds . . . such tax computed by excluding from the decedent's gross estate the value of such property transferred . . . .") (Emphasis added).