T. KIMBALL BROOKER, as Ex'r of the Estate of Nancy Neumann Brooker, Plaintiff-Appellee, v. LISA MADIGAN, as Attorney General of the State of Illinois, *et al.*, Defendants-Appellants (Maria Pappas, as Treasurer of Cook County, Illinois, Defendant).

First District (1st Division)   No. 1—07—1876

Opinion filed February 17, 2009.

HALL, J., dissenting.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Diana M. Potts, Assistant Attorney General, of counsel), for appellants.

M. Read Moore and Ryan M. Harding, both of McDermott, Will & Emery LLP, of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This appeal questions whether the estate of Nancy Neumann Brooker, valued at more than $68 million, is liable to the State of Illinois for $3,530,949.32 in estate "death" taxes. The answer hinges on the interpretation of the 2003 amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act that defines "State tax credit" at the time of Ms. Brooker's death as "an amount equal to the full credit calculable under Section 2011 *** of the Internal Revenue Code

*as the credit would have been computed and allowed* under the Internal Revenue Code as in effect on December 31, 2001." (Emphasis added.) 35 ILCS 405/2(a) (West 2004). The circuit court accepted the estate's position that because it did not claim a credit on its federal tax return, no estate tax is due under the Illinois Estate and Generation-Skipping Transfer Tax Act.

We conclude that whether Illinois estate taxes are due does not turn on whether the estate chooses to claim a "credit for State death taxes" under section 2011 on its federal tax filing. Rather, Illinois estate taxes are due on every taxable transfer within the State of Illinois in the amount of "the credit [that] would have been computed and allowed" as provided by the 2003 amendment, whether or not a credit is claimed on the estate's federal tax filing. Accordingly, we reverse and remand.

## BACKGROUND

As the backdrop to our analysis, we begin with the interplay between the Illinois and federal estate taxation systems. We then examine the Federal Economic Growth and Tax Relief Reconciliation Act of 2001 (26 U.S.C. §1 *et seq.* (2006)), followed by Illinois's response in the 2003 amendment to the Illinois Estate and Generation-Skipping Transfer Tax Act. We then consider the 2003 amendment in light of the facts of this case. Finally, we set out the circuit court proceedings in this case.

## I. Illinois's Pick Up Tax: 1983-2003

From 1983 through 2003, Illinois imposed a "pick-up" estate tax "coupled" with federal law. D. Berek, *Illinois' New Estate-Tax Law*, 91 Ill. B.J. 465, 465 (2003). Section 2011 of the Internal Revenue Code (IRC) (26 U.S.C. §2011 (2000)) gave estate taxpayers a credit of up to 16% of the federal estate tax liability for taxes they paid to the state. *McGinley v. Madigan*, 366 Ill. App. 3d 974, 977, 851 N.E.2d 709 (2006); Berek, 91 Ill. B.J. at 465. This coupling of state and federal estate taxes provided a revenue stream for the state's coffers without imposing an additional tax burden on the affected estate. In effect, the state tax credit under section 2011 of the IRC diverted tax revenue from the federal to the state coffers. Illinois simply "picked up" the maximum amount of credit permitted under federal law for estate taxes paid to the state. K. Bohl, *The Resurrection of the Death Tax: Decoupling and the Economic Growth and Tax Relief Reconciliation Act of 2001*, 13 Elder L.J. 417, 432 (2005).

This taxation scheme was codified in the Illinois Estate and Generation-Skipping Transfer Tax Act (Estate Tax Act). Section 3(a) provided an estate tax to be imposed "on every taxable transfer involv-

ing transferred property having a tax situs within the State of Illinois." 35 ILCS 405/3(a) (West 2002). The amount of the tax was "the maximum state tax credit allowable [under Section 2011 or Section 2604 of the [IRC]] with respect to the taxable transfer." 35 ILCS 405/2, 3(b) (West 2002).

## II. The 2001 Federal Economic Growth and Tax Relief Reconciliation Act

In 2001, Congress enacted the Federal Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA) (26 U.S.C. §1 *et seq.* (2006)), effective January 1, 2002. EGTRRA gradually increased the federal estate tax base exemption amount from $700,000 in 2001 to $3.5 million in 2009, gradually repealed the federal estate tax, with a full repeal to occur in 2010, and gradually phased out the credit under section 2011 for state death taxes. *McGinley*, 366 Ill. App. 3d at 977; Berek, 91 Ill. B.J. at 465. The section 2011 credit was reduced by 25% in 2002, 50% in 2003, and 75% in 2004. 26 U.S.C. §2011(b)(2)(B) (2006). Beginning in 2005, the section 2011 credit for state estate taxes was fully repealed. 26 U.S.C. §2011(f) (2006). EGTRRA essentially ended the diversion of estate tax revenue from the federal government to the states by increasing the base exemption for estates and reducing the federal credit for state estate taxes. S. Bart, *This is Me Leaving You: Illinois Departs from the Federal Estate Tax Scheme*, 92 Ill. B.J. 20, 21 (2004). According to one commentator, with EGTRRA "the federal government is effectively redirecting state revenue into the federal piggy bank under the auspices of a federal tax cut." Bohl, 13 Elder L.J. at 421. In other words, the federal government was turning the table on the states. The states could no longer divert federal estate taxes by imposing estate taxes under state law in the amount of the section 2011 credit, while leaving the gross (federal and state) tax burden on the estates the same.

## III. Illinois's Amended Estate Tax Act

As a result of EGTRRA, Illinois, with a pick-up estate tax scheme based on the maximum amount of credit that an estate may claim on its federal tax return for state estate taxes, faced a loss of revenue. As the section 2011 credit was reduced by 25% each year beginning in 2002, until it disappeared in 2005, Illinois would see a corresponding reduction in the state estate taxes paid. To address this reduction in Illinois's tax revenue stream, our legislature amended the Estate Tax Act by enacting Public Act 93—30 (Pub. Act 93—30, eff. June 20,

2003).[1] *McGinley*, 366 Ill. App. 3d at 987. This legislation has been described as "likely the most complex decoupling law enacted among the states" in response to EGTRRA. Bohl, 13 Elder L.J. at 432.

Section 3(a) of the Estate Tax Act continued to impose an estate tax "on every taxable transfer involving transferred property having a tax situs within the State of Illinois." 35 ILCS 405/3(a) (West 2004). Public Act 93—30 amended the Act to define the amount of the estate tax due as "the state tax credit, as defined in Section 2 of this Act, with respect to the taxable transfer." 35 ILCS 405/3(b) (West 2004). Amended section 2(a) defined "State tax credit," for persons like Ms. Brooker dying between January 1, 2003, and December 31, 2005, as:

> "[A]n amount equal to the full credit *calculable under Section 2011 or Section 2604 of the [IRC] as the credit would have been computed and allowed* under the [IRC] as in effect on December 31, 2001, without the reduction in the State Death Tax Credit as provided in Section 2011(b)(2) or the termination of the State Death Tax Credit as provided in Section 2011(f) as enacted by [EGTRRA], but recognizing the increased applicable exclusion amount through December 31, 2005." (Emphasis added.) 35 ILCS 405/2(a) (West 2004).

Through Public Act 93—30, the legislature sought to "decouple," or separate, the computation of the Illinois estate tax from the post-EGTRRA version of section 2011 in an attempt to preserve Illinois's estate tax revenue stream of revenue. *McGinley*, 366 Ill. App. 3d at 987.[2] The legislature did not create "an entirely new tax on Illinois estates"; rather, "it set a new tax rate that was unrelated to the contemporaneous federal estate tax rate." *McGinley*, 366 Ill. App. 3d at 987.

### IV. Nancy Neumann Brooker's Estate

Nancy Neumann Brooker passed away on August 31, 2003. Her husband, T. Kimball Brooker, was appointed the executor of her estate.

The estate filed federal and state estate tax returns on November 30, 2004. The estate's Illinois Estate and Generation-Skipping Transfer Tax Return reported no Illinois estate tax liability. The estate's federal return reported a tentative estate tax of

---

[1] The legislature subsequently enacted Public Act 94—419 (Pub. Act 94—419, eff. August 2, 2005) to remedy several deficiencies with Public Act 93—30. Neither those deficiencies nor Public Act 94—419 is at issue in this case.

[2] At the time of Ms. Brooker's death in 2003, the Illinois estate tax was only "partially decoupled" from federal law because the law recognized the federal exclusion changes but "ignor[ed]" the phase-out of the section 2011 credit. Bohl, 13 Elder L.J. at 433.

$12,581,225.49. The estate reduced this amount by the maximum unified credit of $345,800. The estate then claimed a prior transfer credit of $9,205,862.56 for the federal estate taxes paid on Ms. Brooker's parents' estates, each of whom predeceased her in quick succession. See 26 U.S.C. §2013 (2006).[3] The net estate tax liability reported on the federal return was $3,029,562.93.

According to the executor, the estate "did not claim any [IRC] Section 2011 credit for state death taxes on its federal estate tax return" because the $9,205,862.56 prior transfer credit it received "almost entirely offset the [estate's] federal estate tax liability."

After conducting an audit, the Illinois Attorney General concluded the estate was liable for an estate tax of $3,530,949.32 based on the tax rate in effect on December 31, 2001, plus $329,555.27 in penalties and interest. Because Ms. Brooker died in 2003, she was eligible to claim 50% of this amount, $1,765,474.66, as a section 2011 credit on her federal return. See 26 U.S.C. §2011(b)(2)(B) (2006). Had the estate claimed the $1,765,474.66 section 2011 credit, its federal liability would have been reduced to $1,264,088.27 ($3,029,562.93 – $1,765,474.66), while its gross tax liability would have increased to $4,795,037.59 ($3,530,949.32 to the State + $1,264,088.27 to the federal government). Basic arithmetic tells us the estate saved $1,765,474.66 by not claiming a section 2011 credit ($4,795,037.59 – $3,029,562.93).

The estate paid the total amount due—$3,860,504.59—under protest pursuant to the State Officers and Employees Money Disposition Act (the Protest Monies Act) (30 ILCS 230/2a (West 2004)).

## V. Circuit Court Proceedings

On February 2, 2005, the executor filed a six-count verified complaint in the circuit court of Cook County seeking a declaration that the estate was not liable for any Illinois estate taxes. He also sought a temporary restraining order and preliminary injunction directing the Treasurer to maintain the disputed tax payment in a protest fund pending the ultimate disposition of the case. The court entered a preliminary injunction that day.

The executor filed a multicount second-amended verified complaint on July 31, 2006. Count II, the only count at issue on appeal, sought a declaration that

"the Estate's State Tax Credit equals the amount of IRC Section 2011 credit for state death taxes actually allowed under IRC Section 2011, as in effect on December 31, 2001, on the Estate's Federal Estate Tax Return."

---

[3]Both parents passed away more than two but less than four years before Ms. Brooker's death.

The parties filed cross-motions for partial summary judgment. The executor contended the estate was not "allowed" a section 2011 credit because it did not claim a credit on its federal form. The executor argued "[b]ecause the Illinois estate tax is based on the amount of IRC Section 2011 credit for state death taxes 'allowed,' if no credit is 'allowed' under IRC Section 2011 no Illinois estate tax is payable." The argument continued:

"By basing the Illinois estate tax liability of a resident decedent's estate on the IRC Section 2011 credit for state death taxes 'allowed,' the General Assembly fixed the Illinois estate tax due at an amount equal to the state death taxes actually reported to Illinois, paid to Illinois, and allowed by the IRS as a credit on an estate's federal estate tax return, all as computed under the IRC as in effect on December 31, 2001. Each of these requirements must be met for an IRC section 2011 credit for state death taxes to be 'allowed.' If, as in this case, no taxes are reported and paid to Illinois and no IRC Section 2011 credit for state death taxes is taken and used on the estate's federal estate tax return, the Act imposes no Illinois estate tax liability."

The defendants asserted the executor's position was contrary to the legislature's intent to retain a revenue stream by avoiding the EGTRRA credit phase out and by preserving the Illinois estate tax at the 2001 rate. According to the defendants, the legislature intended the estate to be taxed the "full amount calculable under section 2011 of the [IRC]," calculated at the 2001 rate.

The trial court agreed with the executor's position, granted his motion for partial summary judgment and denied that of the defendants. In its final order, the court dismissed the remaining counts of the verified second-amended complaint, dissolved the preliminary injunction entered on February 2, 2005, and directed the Treasurer to return the funds paid under protest with statutory interest. The dissolution of the injunction and return of the funds have been stayed pending this timely appeal.

## ANALYSIS

The defendants contend their interpretation of amended section 2(a) of the Estate Tax Act should prevail. They request we reverse the grant of partial summary judgment for the executor and enter summary judgment in their favor.

### I. Standard of Review

The resolution of this appeal hinges on the construction of section 2(a) of the Estate Tax Act, as amended by Public Act 93—30. " '[T]he interpretation of a statute is a matter of law for the court and ap-

propriate for summary judgment.' [Citation.]" *Governmental Interinsurance Exchange v. Judge,* 221 Ill. 2d 195, 211, 850 N.E.2d 183 (2006).

The cardinal rule of statutory construction is to "ascertain and give effect to the intent of the legislative body" (*Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210,* 231 Ill. 2d 184, 198, 897 N.E.2d 756 (2008)), an undeniably "thorny task" (*O'Casek v. Children's Home & Aid Society,* 229 Ill. 2d 421, 441, 892 N.E.2d 994 (2008)). "[T]he legislative intent that controls the construction of a public act is the intent of the legislature which passed the subject act, and not the intent of the legislature which amends the act." *O'Casek,* 229 Ill. 2d at 441.

"[S]tatutes imposing a tax are strictly construed against the government and in favor of the taxpayer." *In re Consolidated Objections to Tax Levies of School District No. 205,* 193 Ill. 2d 490, 496, 739 N.E.2d 508 (2000). "Although laws which impose taxes require strict construction, in order to effectuate the intent of the legislature, they must be given a reasonable construction, without bias or prejudice against either the state or the taxpayer." *TTX Co. v. Whitley,* 313 Ill. App. 3d 536, 543, 729 N.E.2d 844 (2000), citing *Northwest Airlines, Inc. v. Department of Revenue,* 295 Ill. App. 3d 889, 892, 692 N.E.2d 1264 (1998).

At oral argument, the parties agreed that the statute is not ambiguous and we need not resort to statutory construction aids. The executor reminds us that the tax statute should be strictly construed against the State. The defendants point to the very enactment of Public Act 93—30 as demonstrating the legislature's intent to continue to tax the state's wealthiest estates.

We agree with the parties; section 2(a) is not ambiguous. We examine the plain language of the statute and the legislature's intent in enacting it (*Board of Education,* 231 Ill. 2d at 198), while according weight to the legislature's intent in enacting section 2(a) in its pre-amended form (*O'Casek,* 229 Ill. 2d at 441). Because the aim of the preamended form of section 2(a) was clearly to impose taxes on estates, we review the 2003 amendment with the aim of giving it "a reasonable construction, without bias or prejudice against either the state or the taxpayer." *TTX Co.,* 313 Ill. App. 3d at 543.

We review the trial court's grant of summary judgment and its interpretation of the statute *de novo.* See *Murray v. Chicago Youth Center,* 224 Ill. 2d 213, 228, 864 N.E.2d 176 (2007).

## II. Section 2(a)

As stated above, Public Act 93—30 amended section 2(a) of the

Estate Tax Act to define "State tax credit" for persons dying between 2003 and 2005 as "an amount equal to the full credit calculable under Section 2011 *** of the [IRC] as the credit *would have been computed and allowed* under the [IRC] as in effect on December 31, 2001." (Emphasis added.) 35 ILCS 405/2(a) (West 2004).

The defendants contend by enacting Public Act 93—30, the General Assembly intended to collect a tax equal to the full credit calculable under the version of section 2011 in effect in 2001. In other words, the defendants assert the General Assembly sought to preserve the collection of the Illinois estate tax by "locking in" the 2001 rate. Relying on the statute's plain language, the defendants assert:

> "The phrase 'as the credit would have been computed and allowed under the [IRC] as in effect on December 31, 2001,' simply modifies the earlier phrase 'the full credit calculable under Section 2011' by specifying the *version* of Section 2011 to be used—the version in effect on December 31, 2001. The phrase 'as the credit would have been computed and allowed' uses past verb tenses (*i.e.*, 'computed' and 'allowed') because it refers to a time in the past—December 31, 2001—and *not* when the decedent actually passed away." (Emphasis in original.)

According to the defendants, "the only relevant question is how the credit would have been computed and allowed by the [IRS] back in 2001, not what the [IRS] *actually* allows in any specific case." (Emphasis in original.) In this case, the parties agree that the IRS would have allowed a tax credit of $1,765,474.66. The Illinois Attorney General calculated the estate's tax liability under the 2001 rate to be $3,530,949.32. The estate, however, did not claim any state tax credit because the federal tax credit of $9,205,862.56, based on prior transfers that it was entitled to, far exceeded any credit for state death taxes it might claim. Thus, the estate would have received no economic benefit by claiming a state estate tax credit on its federal tax return in light of the large federal tax credit. Because it claimed no state tax credit on its federal tax return, the executor contends the estate owes no Illinois death taxes under his interpretation (adopted by the circuit court) of the 2003 amendment.

Relying on his strict construction of the Estate Tax Act, the executor contends that because no IRC section 2011 credit was actually taken by the estate, it follows that no section 2011 credit was "allowed" by the IRS and no Illinois estate tax was due. The executor argues the General Assembly intended to collect an estate tax only if the Illinois estate tax due would constitute a transfer of what would otherwise have been paid in federal estate taxes. In essence, the executor contends the Estate Tax Act does not impose a tax burden that

exceeds any tax burden imposed by the IRC. The executor asserts: "If *** no taxes are reported and paid to Illinois and no IRC Section 2011 credit for state death taxes is taken and used on the estate's federal estate tax return, the Act [2003 amendment] imposes no Illinois estate tax liability." According to the executor, "the Estate simply engaged in post-mortem tax planning to legally reduce its tax burdens."

The defendants contend that the estate's interpretation of the Estate Tax Act that places responsibility on the estate itself to decide whether it owes Illinois estate taxes "simply by not claiming a state death tax credit on its federal estate tax return" is an absurd result, which cannot be the legislature's intent.

There is little dispute between the parties that the legislature's purpose in amending section 2(a) post-EGTRRA was to retain state tax revenue by decoupling the Illinois estate tax from the federal state death tax credit. See *McGinley*, 366 Ill. App. 3d at 987 ("With the passage of [EGTRRA], which phased out federal estate taxes, the Illinois legislature was faced with either decoupling its tax rates or losing revenue. *** [Accordingly, Public Act 93—30 was passed in pursuit of] the legitimate purpose of avoiding a loss of revenue"). As made clear in *McGinley*, the State faced a loss of tax revenue if it allowed the amount of estate taxes to slowly disappear with the gradual elimination of the state tax credit under EGTRRA. It is also beyond contention that the overwhelming purpose of the Estate Tax Act is clearly reflected in its title, to collect revenue. What separates the parties is the Estate Tax Act's application to the Brooker estate.

Relying on the statute's plain language, the executor highlights the legislature's use of the term "allowed" in section 2(a) as amended, rather than "allowable" as used in the pre-EGTRRA statute. In his view, before a credit is "allowed" under section 2011 in 2001 three events must occur: (1) the estate files a state tax return showing a tax due; (2) the estate pays taxes due to the State; and (3) the estate then claims the credit on its federal return. The executor explains that the "unique" and "unusual" circumstances of this case impacted the three triggering events. The close temporal proximity of Ms. Brooker's death and her parents' deaths allowed the estate to claim a large federal credit for prior transfers under section 2013. Based on this large federal credit, it chose not to reduce its federal liability further by claiming a section 2011 credit on its federal return, filing a state tax return showing a tax due, and paying a tax to the State. Because none of the requisite three events occurred in this case, the credit was not "allowed" under the 2001 version of section 2011. The executor asserts "allowed" constitutes a taxation "term of art" that we must assume the legislature understood when it chose the word. In effect,

he contends the change in text from "allowable" to "allowed" by the legislature indicated a change in state tax policy. He asserts the legal distinction between "allowed" and "allowable" is consistent with other areas of taxation law, and points our attention to cases from other jurisdictions—*In re Estate of Eberbach*, 535 N.E.2d 1194 (Ind. 1989), and *Mary S. Riethmann Trust v. Director of Revenue*, 62 S.W.3d 46 (Mo. 2001).

In *Eberbach*, the Indiana Supreme Court agreed with the lower court's finding that the estate owed the difference between the section 2011 credit actually permitted by the federal government and the amount of the death tax paid. The court reasoned because the legislature chose the word "allowed" rather than "allowable," the legislature intended to "encompass only the amount of credit actually used and not the amount that could have been used." *Eberbach*, 535 N.E.2d at 1196.

In *Riethmann*, the parties agreed "allowed" meant "the amount by which the federal estate tax liability is reduced by actual payment of the state death taxes," but disputed the meaning of "allowable." *Riethmann*, 62 S.W.3d at 48. The Missouri Supreme Court held "allowable" meant "the amount of credit permitted against the actual federal estate tax payable after all other credits are taken." *Riethmann*, 62 S.W.3d at 48. The decedent's estate was able to reduce its federal tax liability to zero by way of a prior transfer credit. The court held that because it did not owe any federal estate taxes, it did not owe state estate taxes. The court reasoned the legislative intent behind the pick-up statute was to divert revenue from the federal government to the state. Because the estate owed no federal estate tax after the credit for prior transfers was taken, no credit was "allowable," and the estate did not owe estate tax under Missouri law.

*Eberbach* and *Riethmann* do not persuade us that the Illinois Estate Tax Act should be read as the respective estate taxation statutes were read in each foreign case. We are unconvinced that when section 2(a) was amended, the Illinois legislature had in mind the definition of "allowed" provided by two foreign cases prior to the enactment of EGTRRA. *Eberbach* and *Riethmann* involved pick-up taxation schemes fully coupled with federal law, which has eliminated the state tax credit under section 2011. According to the highest court of Missouri and Indiana, the clear legislative goal of those state schemes was to avoid imposing an additional tax burden on its residents. Amended section 2(a), on the other hand, is no longer fully coupled with federal law, and the congressional repeal of the section 2011 credit has essentially forced states like Illinois to burden their residents with "a new tax rate *** unrelated to the contemporaneous federal estate tax

rate." *McGinley*, 366 Ill. App. 3d at 987. Unlike either *Eberbach* or *Riethmann*, the changes in IRS section 2011 brought about by EGTRRA do not drive the revenue stream the Illinois legislature sought to maintain by amending section 2(a). Further, the reliance by the Indiana and Missouri courts on the usage distinction between "allowed" and "allowable" has not been observed by other jurisdictions. See *In re Lacks Estate*, 255 Mich. App. 555, 562, 662 N.W.2d 54, 58 (2003) (construing "allowable" in the Michigan pick-up tax as the estate construes "allowed" in this case). *Eberbach*'s and *Riethmann*'s construction of the term "allowed" provides no guidance in this case, as the taxation schemes at issue in those cases are distinguishable. The distinction between the Indiana and Missouri provisions and the Illinois statute may well be the legislature's decision to "lock-in" the 2001 rates, which predated the gradual reduction in the state death tax credit under EGTRRA beginning in 2002.

The defendants argue the plain language of the statute, coupled with the legislative purpose of decoupling the Illinois estate tax from the federal system in order to retain revenue, demonstrates the legislature intended for the estate to pay an Illinois estate tax in this case, even where no section 2011 credit is claimed on its federal return. We are compelled to agree.

The executor acknowledges in his second-amended complaint, echoed in the stipulation in this case, that the preamended pick-up version of the Estate Tax Act imposed an estate tax "equal to the *maximum* allowable [IRC] Section 2011 credit for state death taxes." (Emphasis added.) See 35 ILCS 405/3(b) (West 2002) (defining the estate tax as "the maximum state tax credit allowable"); 35 ILCS 405/2 (West 2002) (defining "State tax credit" as "the credit for state tax allowable under Section 2011"); see also *McGinley*, 366 Ill. App. 3d at 977 ("since 1983, Illinois law has taxed an estate at the maximum rate allowable by the federal tax credit"). There is nothing in the language of amended section 2(a) to indicate the legislature sought to do anything but continue its former taxation scheme as if EGTRRA did not exist. We are unconvinced that amended section 2(a) demonstrates a change in legislative purpose. See, *e.g.*, Bohl, 13 Elder L.J. at 433 (by amending section 2(a), the State sought to "ignore" the phaseout of section 2011 credit); Berek, 91 Ill. B.J. at 465 ("As amended, the new law ensures that Illinois will continue to receive the same amount of tax from a decedent's estate as in the past, without regard to recent federal changes that otherwise reduce the amount allocable to the states"). " 'The intention of the legislature *** should be controlling and no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent.' " *In re Ap-*

*plication of Rosewell*, 97 Ill. 2d 434, 440, 454 N.E.2d 997 (1983), quoting 1A C. Sands, Sutherland on Statutory Construction §25.03, at 299 (4th ed. 1972). We do not read the change in text from "allowable" to "allowed" to indicate a change in state tax policy.

We agree with the defendants, the plain language of the statute, read in light of the legislative purpose to decouple the state estate tax from the federal estate tax, requires the Brooker estate to pay state estate taxes in this case.

## CONCLUSION

We hold the Brooker estate may not avoid the imposition of Illinois estate taxes for a taxable property transfer with a tax situs within the State of Illinois by merely electing to forego a credit for state death taxes under IRC section 2011 on its federal tax return. The Estate Tax Act provides no basis for an estate to avoid the tax obligations of a taxable event by simply choosing not to claim a state tax credit on its federal tax return. Irrespective of whether the estate may choose to claim a credit, Illinois estate taxes are due "as the credit would have been computed and allowed under the Illinois Revenue Code as in effect on December 31, 2001." The circuit court erred when it entered partial summary judgment in favor of the executor.

This cause is reversed and remanded with directions to enter summary judgment in favor of the defendants.

Reversed and remanded with directions.

JUSTICE WOLFSON concurs.

JUSTICE HALL, dissenting:

I respectfully dissent from the majority's determination that the Brooker estate may not avoid the imposition of Illinois estate tax by failing to claim a credit on its federal tax return. Well-settled rules of statutory construction require that the circuit court's decision be affirmed.

I agree with the majority that the goal of statutory interpretation is to ascertain and give effect to the intent of the legislative body. However, "the simplest and surest means of effectuating this goal is to read the statutory language itself and give the words their plain and ordinary meaning." *Board of Education, Joliet Township High School District No. 204*, 231 Ill. 2d at 198. Our supreme court has cautioned that where the language of the statute is plain and unambiguous, a court need not consider other interpretive aids. *Ultsch v. Illinois*

*Municipal Retirement Fund*, 226 Ill. 2d 169, 184, 874 N.E.2d 1 (2007). Significantly, "[t]here is no rule of statutory construction that authorizes a court to declare that the legislature did not mean what the plain language of the statute says." *Ultsch*, 226 Ill. 2d at 184.

After agreeing with the parties that the section 2(a) is not ambiguous, the majority ignores the plain language of the statute and, instead, reads "allowed" as "allowable" in order to achieve the result in this case. However, those terms are not interchangeable. See *Beyer v. Commissioner of Internal Revenue*, 916 F.2d 153, 155 (4th Cir. 1990) (" 'allowable' deductions, those available to a taxpayer whether or not they are actually claimed on a tax return, and 'allowed' deductions, those actually claimed by the taxpayer on a particular return"); but see *Lacks*, 255 Mich. App. at 562, 662 N.W.2d at 58.

The result reached by the circuit court in this case does not ignore the legislative intent to protect its revenue source from changes to the federal tax code. In the majority of cases, the credit will be taken. The facts of the present case make it an exception to the rule.

I would affirm the decision of the circuit court.

Therefore, I respectfully dissent.